BUTLER, APPELLANT, v. HINCKLEY, APPELLEE.

1. PARTNERSHIP—TEST OF.—The intention of the parties usually furnishes the test by which to determine whether or not a partnership relation exists *inter se.* When the facts are ascertained the question is one of law.
2. INTEREST IN PROFITS.—An agreement for an interest in the profits of a business, as a means of compensation only, does not constitute a partnership.
3. HOLDING OUT AS A PARTNER.—Where a person with his knowledge and consent has been held out to the person having a claim, or to third parties, as a partner, liability as a partner is fastened upon him. A secret and unauthorized holding out, however, will not have this effect unless as the result of a subsequent ratification.
4. CONDITIONAL TENDER.—Tender must be absolute. If made conditional upon giving a receipt in full for all demands, it is not good.

*Appeal from District Court of Lake County.*

THIS action was instituted by Edward E. Hinckley, appellant, against Samuel M. Carleton and Hugh Butler. It is for work and labor performed upon the Ella Beeler mine, between the 7th day of September, 1885, and the 28th day of January, 1886, inclusive, by the plaintiff, Elmer E. Hinckley,

Charles H. Metcalf and Leeland E. Cook; plaintiff averring an assignment to him of the claims of Hinckley, Metcalf and Cook. It is alleged that the work was done at the special instance and request of appellant Butler, as well as at the request of Carleton. Carleton made no defense to the action. Butler appeared and defended unsuccessfully; a judgment having been rendered against him for the entire amount claimed. Upon this appeal no question, as to the services having been rendered or as to the amount or value of the same, is raised. Appellant claiming that under the established facts he is not, as a matter of law, liable.

Messrs. PARSONS & LYLES, for appellant.

Mr. HUGH BUTLER, *pro se.*

Mr. A. W. STONE, for appellee.

CHIEF JUSTICE HAYT delivered the opinion of the court.

The liability of the appellant is asserted upon two grounds: *First*—That a mining partnership existed between Butler and Carleton for working the Ella Beeler mine. *Second*—That there was such a holding out of Butler as a partner as made him liable as such to third parties.

The case was submitted to the district court without a jury. A familiar rule precludes this court from weighing the evidence for the purpose of substituting its judgment for that of the court below.

We may, however, look to the evidence for the purpose of ascertaining whether or not there is any evidence to support the conclusion of the district court. The record discloses that some time in the spring of 1885 the workmen at the Fortune mine, a property adjoining the Ella Beeler claim, discovered a body of mineral of great promise. News of this discovery having reached Samuel M. Carleton, a miner, and one of the defendants in the district court, he conceived the

idea that the Fortune vein extended into the Ella Beeler property and thought that by a little work in a certain part of the latter claim the vein could be disclosed therein.

Entertaining this opinion he concluded it would be a good speculation to procure a bond and lease upon the Ella Beeler claim, and prosecute development work in accordance with his theory as to the trend of the vein already uncovered in the Fortune workings. Being without capital himself and money being necessary to prosecute the work he asked appellant, Butler, to join him in procuring a bond and lease. Butler declined to join with him in the proposed venture, but after several interviews did agree to advance money with which to work the property should Carleton succeed in obtaining the desired bond and lease upon the property.

Carleton succeeded in procuring a satisfactory bond and lease and Butler advanced money from time to time, which was used to meet the expenses of working the mine. It is in evidence and uncontradicted that this money was advanced as a personal accommodation to Carleton to be refunded out of the first net profits of the mine. Under this arrangement the mine was worked for some time. Butler advancing most of the money used for this purpose. This arrangement continued until about the 12th day of August, 1885, up to which time Butler had advanced money from time to time, aggregating about the sum of $4,000.

There is no evidence to show that up to this time any partnership existed between Butler and Carleton. About this time Carleton came down to Denver and visited Butler for the purpose of reporting upon the condition of affairs at the mine and arranging, if possible, to further prosecute the work. He applied to Butler for an additional loan and Butler advanced him $300. At the time of advancing this money Butler notified Carleton that he would not make any more advances. Something was said about the repayment to Butler of the money already advanced. Carleton being without means agreed to assign to Butler a half interest in the bond and lease upon the mine, as security for the money already

advanced, the sum to be paid as theretofore agreed. The nature of the transaction appears from the following written receipt, given by Butler and accepted by Carleton at the time, and introduced in evidence by plaintiff:

·"LEADVILLE, August 12, 1885.

"Received of S. M. Carleton an assignment of a certain half interest in and to a lease and bond of the Ella Beeler mine, which assignment, in addition to the first net profit of said mine to the amount of money already advanced for working the same by me, shall and does constitute good and sufficient consideration and payment in full for said money advanced.                    HUGH BUTLER."

The principal controversy in this case is in reference to Butler's liability for the expenses of working the mine between the 12th day of August, 1885, and the first day of January, 1886. Soon after August 12th Carleton returned to the mine and prosecuted the work in a desultory sort of way until the first of January following, at which time, being out of money and indebted to a considerable extent, he found that he was unable to continue the work and notified Butler to this effect.

Carleton having abandoned the work, Butler took charge for the purpose of keeping the lease alive, in which he was interested as security. Practically there is no dispute in the case as to Butler's liability for the work performed after the 1st day of January, 1886. This matter, however, will be further noticed later on in this opinion.

· The uncontradicted evidence shows that appellee, and those assigning to him, commenced work upon the mine in Sept., 1885, under an arrangement with Carleton. It is not shown that appellant Butler had anything directly to do with his employment. In fact, appellee admits that he never saw Mr. Butler until after this time, and it is conceded that no communications passed between them. The testimony further shows that no claim was ever made that Butler was liable for the expense incurred by Carleton, in working the mine between the dates mentioned, until months thereafter.

To establish a partnership between Butler and Carleton plaintiff is therefore compelled to rely almost entirely upon the agreement of August 12th, 1885.

Upon an examination of the receipt given at that time, which substantially embodies the agreement then entered into, it is to be observed: *First*, that the debt to Butler is admitted by Carleton, the same to be paid out of the first net profits of the mine; *second*, an assignment to Butler of a half interest in the lease and bond upon the mine. It is well settled by the decisions of this court that where a person is only interested in the profits of a business as a means of compensation, he is not a partner. His interest in such case being held to be but a claim against the profits as a fund out of which when ascertained he is to be compensated. *Lefever v. Castagnio*, 5 Colo. 564. And certainly taking an assignment of the whole or an interest in the bond and lease, under the circumstances, did not make Butler a partner.

In support of the decision of the district court the case of *Manville v. Parks*, 7 Colo. 128, is strongly relied upon. In this case there were five persons who were sought to be held as partners; namely: Parks, Yates, and three others. Parks and Yates being the originators of the venture, through whose representations the others were induced to join. They were parties to the bond and lease, which were obtained from the owner; they consulted with the others in reference to working the property and joined with them in engaging a manager to take charge of the mining operations, in the interest of all. The suit was for supplies and labor at the mine which this manager ordered, as he was authorized to do by the terms of his employment. Parks and Yates insisted that they were to be released from the payment of any of these expenses on account of their services in procuring the lease and in consideration of legal services to be rendered from time to time thereafter, as occasion might require. The evidence showed, however, such a community of interest between all the parties as made them all members of a mining partnership. Under these circumstances, if there was any partnership at

all between the parties, Parks and Yates were necessarily parties to it, as there was nothing to distinguish their relation to the enterprise from that of the others.

The case would be more in point if Parks and Yates had agreed to procure a contract from the owner of the mine, preparing the papers and performing the legal work necessary, receiving as a compensation a certain interest in the profits of the venture. Had this been the case they could not have been held as partners under the decision of *Le Fever v. Castagnio, supra.* And we do not understand that the principles announced therein have ever been overruled or modified in this state. The intention of the parties usually furnishes the test by which to determine whether or not a partnership relation exists *inter se.* And when the facts are ascertained the question is one of law. In this case neither the actual relation which the parties assumed towards each other nor the rights and obligations which they created, or intended to create, made them partners. Parsons on Partnership, § 58; Bates on Partnership, § 17.

Being of opinion that there was no partnership in fact between Butler and Carleton, the next question is, as to whether there was such a holding out, as made Butler liable to third parties. It is well settled that where a person with his knowledge and consent has been held out to the person having a claim or to third parties as a partner, liability as a partner is fastened upon him. A secret and unauthorized holding out, however, will not have such effect, unless as the result of a subsequent ratification.

In passing, it is to be observed that the record is entirely barren of evidence tending to show that there was any holding out of Butler as a partner to either Hinckley, Metcalf or Cook, plaintiff's assignors. As to appellees it is shown that he was employed by Carleton on Sept. 7th, not knowing at the time that Butler had any interest in the mine or in the operations connected therewith.

Plaintiff testifies with reference to Butler's connection with the working of this mine prior to January 9th, that he

knew that Butler was connected with the operations of the mine from a statement made by Carleton and from a certain writing signed by. Mr. Butler, which Carleton exhibited to him. And further testifies that the ore extracted from the mine was shipped in the name of Carleton and Butler.

In reference to this testimony it is to be noted that it is not shown that Carleton was ever authorized to use Butler's name in such a way as to lead others to believe that a partnership existed between them, and that Butler had no knowledge that his name was being held out in the manner in which it is claimed that Carleton used it. The same may also be said with reference to the shipments of ore to the smelter. If Butler's name was used in this connection it is not shown that it was so used with Butler's consent or even with his knowledge. The uncontradicted evidence shows that the settlements at the smelter were always made by Carleton, either in person or by some one acting for him. Butler neither received any portion of the proceeds from the ore nor is it shown that he was made aware of the details of the transaction to any extent. The written instrument, which plaintiff says was shown to him by the defendant Carleton and upon which he relies as establishing Mr. Butler's liability for labor performed upon the mine, is the receipt already given.

This evidence falls far short of being sufficient to hold Butler liable. The claims for services rendered during the fore part of the month of January stand on a different footing, however.

About January 1st Carleton stopped work, although by the terms of the lease with the owners it was provided that a failure to work the property with at least two men for six consecutive days should, at the option of the lessor, work a forfeiture of the lease. Butler, in order to keep the lease alive, which was the only security he had for the money theretofore advanced, made an arrangement with plaintiff to do sufficient work to prevent the possibility of a forfeiture. Plaintiff and his assignors worked a part of the month of

January under this arrangement. Before the middle of the month an arrangement was made with one Bailey whereby he was to continue the work at his own expense. Butler's responsibility for the work performed in the interim between the date of Carleton's abandonment and Bailey's installment, is admitted.

On March 16th Butler sent checks to Hinckley for the amount due. These checks contained receipts in full for all claims against Butler to date, and for this reason were refused. The checks were not returned at the time, however, although Butler was promptly notified that they would not be accepted. At the trial the checks were surrendered up. Appellant now insists that this constituted a sufficient tender to relieve him from costs. Aside from the fact that the tender was made by checks it was made conditional upon the signing of a receipt in full for all demands. It is well settled that such a tender is of no avail: 2 Greenleaf Ev. § 605; 2 Parsons Notes & Bills, 625; *Wood v. Hitchcock*, 20 Wend. 47.

Appellant's liability as a partner is not established by the evidence, but he is personally liable, as stated, for the services rendered during the portion of the month of January, 1886.

The judgment of the district court will therefore be reversed, with directions that judgment be entered as of date of the original judgment for the amount due for services rendered during the month of January.

                                          *Reversed.*