In re Lloyd George BOOTH, Debtor.

Linda Sue BOOTH, Plaintiff,

v.

Lloyd George BOOTH, Defendant.

Bankruptcy No. 85 B 04763 G.
Adv. No. 85 G 0706.

United States Bankruptcy Court,
D. Colorado.

Feb. 19, 1987.

Edward J. Krisor, Jr., Shoemaker, Wham & Krisor, Denver, Colo., for plaintiff.

Milnor H. Senior, III, Sally Zeman, Denver, Colo., for debtor/defendant.

## MEMORANDUM OPINION AND ORDER

CHARLES E. MATHESON, Bankruptcy Judge.

The Plaintiff filed the within adversary proceeding seeking an order of this Court barring the Defendant's discharge pursuant to the provisions of Section 727 of the Bankruptcy Code and also seeking a determination of nondischargeability as to certain obligations owed the Plaintiff by the Defendant pursuant to Section 523 of the Code.

The matter came on for trial before the Court for the presentation of evidence and the introduction of exhibits. In addition, the deposition of the Defendant was introduced at the trial and has been considered by the Court pursuant to the provisions of F.R.Civ.P. 32(a)(2).

The evidence established that the Plaintiff and Defendant had been married. During their marriage, they had acquired some ranch property near Hudson, Colorado, where they had lived and engaged in farming and ranching operations. The ranching operation included the raising of horses, cattle, hay and corn. They were separated in June 1983 and the marriage was dissolved by a final order of the State Court in January of 1985. The State Court ordered the ranch property sold and the proceeds from the sale divided equally, with the Plaintiff to receive at least $30,000.00 from the sale. The Plaintiff was also awarded maintenance. After they were separated the Defendant stayed at the ranch; however, he also had a separate job as a flight simulation technician at United Air Lines from which he received net monthly income of $2,034.00. He also had some miscellaneous additional income of $130.00 a month.

The Defendant became acquainted with Vinda Smith ("Smith") in December 1983. Sometime, in approximately March or April of 1984, Smith moved onto the ranch with the Defendant, "sharing the house" with him. The Defendant and Smith agreed to an informal financial arrangement whereby the Defendant paid the mortgage and utilities and Smith paid for food, kept the house, prepared the meals and did the laundry. Starting at about the time Smith moved to the ranch, she began putting money into the operation, and also helped Defendant with the ranch operations.

During 1984 the Plaintiff and the Defendant were attempting to settle matters in their dissolution of marriage proceeding. As part of that settlement, they agreed to try to sell the ranch for $180,000.00. The Defendant testified that he and Smith, thereafter, decided they would attempt to purchase the ranch and operate it as the "Broken Arrow Land and Cattle Co." Further he testified that he and Smith intended to apply for a loan to finance the purchase

and that Smith was to be a "full partner in the operation." In December 1984, the Defendant and Smith caused a corporation to be formed under the name of Broken Arrow Land and Cattle Co., but the corporation never became active. It was formed, however, with the intent of transferring the ranch to the corporation in which Smith was to be a 50% owner.

Smith testified that the money that she advanced to the Defendant were loans to be repaid by him. There was introduced into evidence two promissory notes signed by the Defendant. The first note, dated January 21, 1985, was in the amount of $12,500.00 and indicates that it was secured by the Defendant's 1984 income tax refunds. The second note, dated May 29, 1985, was in the amount of $2,000.00 and indicates that it was to be secured by the 1985 hay crop. The larger note is numbered Note # 2 and the smaller as Note # 3. Smith testified that there was a prior note in the amount of approximately $9,000.00 which was signed by the Defendant on October 4, 1984, which, she testified, was destroyed at the time the second note was executed.

Other testimony and evidence received contradicts the statements of Smith. The Plaintiff called the trustee in the case, Cynthia Skeen, who testified that at the Defendant's 341 hearing held on August 20, 1985, the Defendant stated that he gave the larger note to Smith in January 1985 and that there was no written agreement prior to that date. The Defendant did not disagree with the testimony of the trustee. Additionally, in his deposition the Defendant expressly states that he was not aware of any other notes that he had signed other than the two that were ultimately introduced at trial. He further testified that it was probably not until January 1985 that the decision was made to classify the advances made by Smith as loans. Thus it was not until the Defendant and Smith had decided that the ranch itself was lost and could not be purchased by them that Defendant then decided that Smith would not be a partner in the operation and that her advances would be treated as a debt rather than as a contribution to capital.

The Plaintiff also introduced an exhibit prepared by Smith purporting to list the monies advanced to the Defendant starting on April 12, 1984, and continuing until May 30, 1985. That exhibit had been reconstructed by Smith because, according to her testimony, the original records had been destroyed when she and the Defendant moved from the ranch in May of 1985. Nevertheless, that exhibit indicates that through October 31, 1984, the total amount purportedly advanced by Smith equalled only $5,574.11 and not the $9,000.00 which had allegedly been evidenced by a prior promissory note no longer in existence. Additionally, the Plaintiff introduced a financial affidavit dated February 2, 1984, signed by the Defendant and tendered by the Defendant at his January 1985 dissolution of marriage hearing, which purported to list all of his assets and liabilities. In that affidavit no loans from Smith are indicated.

In May 1985, the Defendant received an $8,600.00 check as a refund on his 1984 taxes. That check was endorsed to Smith and deposited by her in her separate bank account. Sometime between January and May of 1985, the Defendant also turned over to Smith a tractor, a swather, and a bailer. When asked at the deposition about the reason for the transfer of the equipment, the Defendant answered:

> Well, I didn't have any money left. I didn't have enough to pay her back all of it. I thought if she could sell it, she would have that much more back on it.

From January 1984 until his bankruptcy case was filed in August 1985, the Defendant did not keep any personal financial records except for his cancelled checks and bank statements. He made no effort to keep a separate record of the funds advanced by Smith. Further, the evidence reflects that in about May 1985, Smith took over control of all of the Defendant's finances and had his paychecks deposited to her account, ostensibly because, at that time, the Defendant had had a mental

breakdown and could no longer handle his affairs. The monies were co-mingled with Smith's funds and paid out at her discretion with no accounting and no apparent ability to account specifically for the Defendant's dollars.

In evaluating the Plaintiff's complaint herein, the basic inquiry starts with the provisions of Section 727(a)(2) of the Bankruptcy Code. That section provides:

The Court shall grant the debtor a discharge, unless—
(1) the debtor is not an individual;
(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
A. property of the debtor within one year before the date of the filing of the petition....

The requirements of this section of the Code were expressly considered in the case of *In re Greenwalt*, 48 B.R. 804 (Bankr.D. Colo.1985). *Greenwalt* outlines the four elements which must be proved in order to sustain an objection to discharge under Section 727(a)(2). Those elements are: (1) that the act complained of was done at a time subsequent to one year before the date of the filing of the petition; (2) that the act was that of the debtor or his duly authorized agent; (3) that the act consisted of transferring, removing, destroying or concealing any of the debtor's property or permitting any of these acts to be done; and (4) that this was done with an intent to hinder, delay or defraud a creditor or an officer of the estate. *Greenwalt, supra,* page 806.

■ The party objecting to the debtor's discharge has the burden of proving that the acts complained of did, in fact, occur. Bankruptcy Rule 4005. There is a split of authority among the bankruptcy courts as to whether the proof is to be by a preponderance of the evidence (see *In re Clausen,* 44 B.R. 41 (Bankr.D.Mn.1984); *In re Kes-*

*sler,* 51 B.R. 895 (Bankr.D.Kansas 1985)), or whether the objector must establish his proof by clear and convincing evidence. *In re Lineberry,* 55 B.R. 510 (Bankr.W.D.Ky. 1985); *In re Cohen,* 47 B.R. 871 (Bankr.S. D.Fla.1985). It is clear in the Tenth Circuit that the grounds for excepting a debt from discharge under Section 523 of the Code must be established by clear and convincing evidence. *In re Black,* 787 F.2d 503 (10th Cir.1986). An attack on dischargeability under Section 727 is much more severe in its effect than excepting a single debt from discharge under Section 523. Because of this severity, and in furtherance of the concept of a "fresh start" for debtors, it is this Court's view that the clear and convincing standard must apply in establishing proof of nondischargeability.

In *Greenwalt, supra,* the Court held that once there is a showing that there are reasonable grounds for believing that the debtor acted in the manner alleged, the burden of proving that the debtor has not committed any such acts shifts to the debtor. *Greenwalt, supra,* page 807. Thus, once the creditor has brought forth facts tending to show a violation of Section 727, the burden then shifts to the debtor who must come forth with a creditable explanation of his actions. *In re Martin,* 698 F.2d 883 (7th Cir.1983); *Shainman v. Shears of Affton Inc.,* 387 F.2d 33 (8th Cir.1967); *In re Cohen, supra;* see *Advisory Committee Notes to Bankruptcy Rule 4005.* As the Court stated in *Cohen:*

The evidence must be such that, when considered in light of all the facts, it leads the Court to the conclusion that the debtor has violated the spirit of the bankruptcy laws and should therefore be denied the privilege of eliminating the legal obligation of his debts. *In re Cohen, supra,* at page 874.

■ Turning to the facts in this matter and applying them to the elements set forth in the *Greenwalt* opinion, the first three elements clearly exist. The Defendant testified that the refund checks and the equipment were given to Smith sometime

between January and May 1985, well within one year of the filing of the bankruptcy case. Further, the transfer of the checks and the delivery of the equipment were done by the Defendant. Finally, these acts clearly constituted "transfers" of property within the broadly defined meaning of the Code. It is as to the fourth element; the "intent" of the Defendant, that additional inquiry must be made.

The intent required must be actual intent as opposed to constructive intent or intent implied in law. *In re Tuttle,* 15 B.R. 14, 5 C.B.C.2d 618 (Bankr.D.Kansas 1981), *affd.,* 16 B.R. 470, 5 C.B.C.2d 627 (D.C.Kansas 1981), *affd.,* 698 F.2d 414 (10th Cir.1983). However, a finding of actual intent can be based on circumstantial evidence or on inferences drawn from the debtor's conduct. *In re Farmers Cooperative Assoc. of Talmage, Kansas v. Strunk,* 671 F.2d 391 (10th Cir.1982); *In re Devers,* 759 F.2d 751 (9th Cir.1985). For this purpose, courts have established certain "badges of fraud," the existence of which establishes the intent element required under Section 727. These "badges" arise from acts of the debtor and include: (1) the gratuitous transfer of valuable property which raises a presumption that such a transfer is accompanied by the necessary fraudulent intent, *In re Greenwalt, supra,* page 807; (2) the transfer of property while the debtor is insolvent to his or her spouse, *In re Kaiser,* 727 F.2d 1574 (2nd Cir.1983); *In re Cadarette,* 601 F.2d 648 (2nd Cir.1979); or (3) a "reckless indifference" to the truth by the debtor. Such indifference has been held to be the same as fraud under Code Section 727. *Diorio v. Kreisler-Borg Construction Co.,* 407 F.2d 1330 (2nd Cir.1969); *In re Cycle Accounting Services,* 43 B.R. 264 (Bankr.E.D.Tenn.1984).

Additionally, in analyzing a transfer, the courts require that the objecting party must show that there is more than just an intent by the debtor to prefer a creditor or creditors. The debtor's intent must be coupled with the transfer of the debtor's property which reduces assets available to other creditors. *In re MacDonald,* 50 B.R. 255 (Bankr.D.Mass.1985); *In re Waddle,* 29 B.R. 100 (Bankr.W.D.Ky.1983). This distinction has been expressly recognized in the Tenth Circuit. *Rutter v. General Motors Acceptance Corporation,* 70 F.2d 479 (10th Cir.1934); see also *In re Gould,* 31 F.Supp. 793 (D.Conn.1939); *In re Adler,* 79 F.2d 840 (2nd Cir.1935); *In re Nicolet,* 10 F.Supp. 541 (D.Md.1935).

Here, we are confronted, in the first instance, with the fact that the Defendant kept no financial records. (This fact, in and of itself, might have justified a determination to deny a discharge under Section 727(a)(3), but this ground for objecting to discharge was specifically withdrawn by the Plaintiff in this case.) The Defendant's lack of financial records other than his cancelled checks and bank statements makes it difficult, if not impossible, to verify the amount of the advances made by Smith. The very fact that the Defendant did not attempt to keep track of those advances is strong evidence that he never, at the time the advances were made, considered that they were loans or would have any liability to repay them.

The lack of available records of the Defendant also bears on the question of whether there was adequate consideration for the transfers made to Smith. Smith's records reflect an unpaid obligation at the time of the filing of the Debtor's bankruptcy herein in excess of $6,000.00, but the credibility of Smith's testimony is highly suspect. It should be noted that she failed to adequately respond to a subpoena duly served on her to produce her financial records at trial. Her attitude on the witness stand was haughty and argumentative. Finally, the story that she had to tell left significant questions. There was the problem with the missing first promissory note. The amount of the note, as observed above, was significantly in excess of the amount that her records show had actually been advanced at the time that the note was signed. The Defendant never recalled signing a first note and the first note, if it existed, was conveniently destroyed at the time the second note was signed. There are no supporting financial records for the

advances Smith allegedly made, all of such records having been lost or destroyed when the Defendant and Smith moved. In addition, there is the complete lack of accounting information regarding the Defendant's checks deposited into Smith's account during the summer of 1985.

There is little contemporary evidence to establish that the Defendant treated Smith's advances as loans. The Court has already noted the Defendant's lack of financial records. Also, it was Defendant's testimony that he and Smith were going to be partners, as evidenced by the organization of the corporation, and he was not concerned about repayment of any of the advances until January 1985 when the dissolution decree entered by the State Court made it clear that he would not be able to put a deal together to keep the ranch.

The evidence establishes that the Defendant and Smith had entered into a business arrangement with respect to the ranch operation. Whether that arrangement was called a "corporation" or a "partnership" is not germane to the matter at hand. It is true that the Defendant and Smith did not enter into a written partnership agreement. However, under Colorado law the intent of the parties determines whether they were operating as a partnership. *Butler v. Hinckley*, 17 Colo. 523, 30 P. 250 (1892). Specific intent to create a partnership is not necessary in order for such a relationship to come into existence. *Fisher v. Colorado Central Power Co.*, 94 Colo. 218, 29 P.2d 641 (1934). A partnership may be formed by the conduct of the parties. *Yoder v. Hooper*, 695 P.2d 1182 (Colo.App. 1984). And if the parties have placed themselves in a relationship which constitutes a partnership, it is not determinative that they do not call themselves a partnership or that they expressly denied that a partnership exists. *Richardson v. Keely*, 58 Colo. 47, 142 P. 167 (1914); *Johnson v. Chilcott*, 599 F.Supp. 224 (D.Colo.1984). A partnership has been recognized by the Colorado courts to be an arrangement whereby parties agree, either orally or in writing, to place their money, effects, labor and skill, or some or all of them, in lawful commerce or business and to divide the profit and bear the loss in certain proportions. *Roberts v. Roberts*, 113 Colo. 128, 155 P.2d 155 (1945).

Here the evidence strongly indicates that at the outset in 1984, the Defendant and Smith did not place themselves in a debtor/creditor relationship. Rather, Smith advanced funds to keep the ranch going with the expectation of being a 50–50 partner with the Defendant and reaping the benefits from the ultimate sale of the ranch property. By her testimony, she advanced in excess of $6,000.00 without any sort of written agreement from the Defendant to repay the same. Similarly, Defendant permitted Smith to advance funds without keeping any record of such advances, and he failed to disclose any liability to Smith at the time he submitted his final financial information to the State Court in January 1985. His testimony was that he and Smith saw to the organization of a corporation which was formed to buy the ranch and in which the shares were to be issued 50–50 between them. In fact, his testimony was that it was not until it was apparent that he and Smith had lost all chance to acquire the ranch that he decided that she should be repaid for the monies that she had advanced.

Consideration must be given as well to the question of why it was necessary for such sums to be advanced by Smith. The Defendant had significant income from his job with United Air Lines. He testified that in January 1985, his mother died and he needed money to travel to the funeral. It was at that time that Smith agreed to advance him $2,000.00 and, according to his testimony, said: "but we are going to make all of the rest of the advances a loan as well." However, at the time that loan was made, the Defendant had money available in the bank to pay a significant part of the costs of travel.

The cases cited above recognize that fraudulent intent is presumed when a debtor who is insolvent transfers property to a family member. *In re Kaiser, supra; In*

*re May*, 12 B.R. 618 (Bankr.N.D.Fla.1980). Here, no evidence was introduced that indicated that the Defendant considered Smith to be his spouse. However, it is evident that their relationship was a close one. She moved to the ranch in March or April of 1984 and continues to live with the Defendant. Further, beginning in May of 1985, the Defendant started to hand his paychecks over to Smith and she handled paying all of their joint living expenses. It is clear that the Defendant was in dire financial straits in the Spring of 1985. As he testified, at the time that he signed the promissory note for $12,500.00 he:

> didn't have any money left. I didn't have enough to pay [Smith] back all of it. I thought if she could sell [the equipment] she would have that much more back on it.

It is particularly suspect where a debtor purports to transfer property but still enjoys the benefits of it. Here, the Defendant endorsed over the tax refund checks to Smith. That money was deposited in her personal bank account which was the same account into which the Defendant's paychecks were transferred and out of which she paid their joint living expenses. He transferred the farm equipment to her and, after the date of the transfer, utilized it in the farming operations. Further, Smith subsequently delivered the swather to the Defendant's attorney handling his dissolution of marriage in part payment of his legal fees.

Evaluating the foregoing in light of the standards established in the *Greenwalt* case, *supra*, it is clear to the Court that the Plaintiff in this case established reasonable grounds to believe that the Defendant transferred the farm equipment and the tax refund checks with an intent to defraud, delay or hinder his creditors. The evidence strongly supports the Plaintiff's contentions that the advances made by Smith were contributions to the partnership carried on by Smith and the Defendant and were not loans. Thus, the turnover of the tax refund check and the delivery of the equipment were not payment of bona fide debts, but were acts to attempt to shield property of the estate against claims of the Defendant's creditors so that the Defendant and Smith could continue to live off the fruits of those transfers. In light of such evidence the burden was upon the Defendant to come forth with evidence to show that he had no such intent. The Defendant needs to do more than merely explain away the inferences arising from the evidence presented. He must present a credible explanation for his actions. The Defendant's evidence, in this case, is inconsistent, contradictory and, in certain instances, lacking in credibility.

This case, like the cases of *In re Adler* and *In re Nicolet, supra,* turns on the bona fides of the matter at hand. At the risk of repetition, the Court must note that the Defendant failed to maintain books and records; there is little or no contemporaneous evidence to show that the Defendant treated the advances as loans when they were made; the testimony of the Defendant and Smith is contradictory on the question of when they decided to consider the "advances" as loans; the Defendant and Smith intended to purchase the ranch, take out loans together and took steps to incorporate the operation; Smith worked the ranch and made decisions with respect to the day to day operations; and the Defendant failed to list the transfer of the equipment to Smith on his Bankruptcy schedules, apparently failed to disclose this fact at the 341 hearing and failed to amend his schedules to reflect this fact.

The Court earlier noted certain types of "badges of fraud," many of which are evident in this case as discussed above. The evidence put forward by the Defendant fails to assist him in overcoming the reasonable inferences established by the evidence introduced by the Plaintiff. Under the circumstances, the Court concludes that the Plaintiff has established the requisite grounds for denying discharges specified by Section 727(a)(2) of the Bankruptcy Code, including that the Defendant made the transfers to Smith with the intent to hinder, delay or defraud his creditors.

Thus, the Defendant's discharge must be denied.

■ The evidence tends to establish to the same degree that the Defendant knowingly and fraudulently, in or in connection with this case, has made a false oath or account by testifying and disclosing that he had transferred funds to Smith in payment of a debt owed her when in fact the transfer was in payment of a non-existent obligation.

In like manner the execution of the promissory note to evidence a non-existent debt constituted a falsification of financial records within the meaning of Section 727(a)(3) of the Code so that the Debtor's discharge must be denied under that section.

The Plaintiff has asserted as well that the debts owed to her, as evidenced by the decree of dissolution of marriage and the property settlement, are nondischargeable obligations within the meaning of 11 U.S.C. § 523(a)(5). In light of the Court's determination that the Debtor should be denied a discharge under Section 727, it is not necessary for the Court to reach the issues raised under Section 523.

Accordingly, and based on the findings and conclusions set forth above, the Court has determined that the Debtor's discharge must be denied, and judgment shall enter accordingly.