In re John Thomas GILPIN and Linda Mae Gilpin, Debtors.

George A. BRAGG and Florence R. Bragg, Plaintiffs,

v.

John Thomas GILPIN, Defendant.

Bankruptcy No. 88–3470–8P7.

Adv. No. 88–422.

United States Bankruptcy Court, M.D. Florida, Tampa Division.

April 12, 1989.

C. Geoffrey Vining, P.A., Pierce J. Guard, Jr., Lakeland, Fla., for plaintiffs.

Scott A. Stichter, Tampa, Fla., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW MEMORANDUM OPINION

ALEXANDER· L. PASKAY, Chief Judge.

THIS IS a Chapter 7 liquidation case, and the matter under consideration is a claim of nondischargeability asserted by George A. Bragg and Florence R.˙ Bragg, his wife (Plaintiffs) who instituted this adversary proceeding pursuant to § 523(c) of the Bankruptcy Code. The claim of nondischargeability which is based on § 523(a)(2)(A) is asserted against John Thomas Gilpin (Debtor) who filed his Voluntary Petition under Chapter 7 of the Bankruptcy Code on June 17, 1988. The facts relevant to the claim under consideration as established at the final evidentiary hearing are as follows:

At the time relevant, the Debtor was the president and sole stockholder with his wife of a corporation known as Tom's Mobile Home, Inc. (Tom's). Tom's has been in business for nineteen years and was engaged primarily in selling mobile homes including furnishings. The transaction is commonly referred to as a "package deal" (Plaintiffs Exh. No. 2). Pursuant to the contract of sale, the purchaser would receive a title to the land at the mobile home park, a fully equipped mobile home and additional amenities required by the park itself which consist of a carport, a porch, a utility shed and sod.

The record reveals that the business of Tom's was cyclical in nature in that it always experienced an annual cash flow crunch, and its operation was tied over from time to time by bank loans obtained by the corporation.

On June 6, 1988, the Plaintiffs entered into a purchase agreement (Plaintiffs' Exh.

No. 1) with Tom's pursuant to which they agreed to purchase a Sandalwood mobile home. The total purchase price was $37,031.75. The sale included all items described in the "package deal". The Plaintiffs paid Tom's the total purchase price in three installments, the last payment on June 6, 1988 (Plaintiffs' Exh. No. 3). It appears that the Debtor did shortly after the execution of the contract contact a subcontractor who did similar work for Tom's over the years and directed the subcontractor to commence the construction of the amenities described earlier. It is without dispute that the job was never completed and the Debtor concedes that the Plaintiffs did not receive the carport, the porch, the utility shed and sod. It is without dispute that the Plaintiffs did receive the other items included in the package.

It appears that Tom's had a long standing banking relationship with Barnett Bank of Polk County. However, in the Fall of 1987 the Debtor encountered some difficulty by obtaining an extension of its outstanding notes from Barnett. This in turn prompted the Debtor to contact the law firm of Stichter & Riedel, the law firm which ultimately filed the Voluntary Petition on behalf of the Debtor and his wife, and also on behalf of the corporation. The problem which arose in the fall of 1987 apparently had been resolved and Tom's continued to do business, and all the way up to the time that the bankruptcy was actually filed, that is, even after the contract was entered into between Tom's and the Plaintiffs.

It appears that Tom's actually paid out of the monies received from the Plaintiffs close to $34,000 for the lot, the mobile home and the furnishings, and the balance was used to meet the general operating expenses of the corporation. There is no evidence in this record that the Debtor or his wife guaranteed the performance of this contract to the Plaintiffs or agreed to be personally liable for anything which might result from this transaction. There is clearly no evidence in this record that they individually became contractually indebted to the Plaintiffs. In this connection it also should be noted that the corporation

was bonded having posted a $25,000 performance bond, and while the Plaintiffs knew about the bond, they failed to make a claim against the bond, which they could have done.

Tom's financial condition further deteriorated and by late May or early June, it became evident that it would not be able to continue to carry on its business. The Debtor contacted the law firm again and retained the law firm to file a Voluntary Petition on behalf of Tom's and also on behalf of himself and his wife and paid the law firm on June 14 the fee charged for these two voluntary petitions. The Petition on behalf of the Debtors was filed on June 17, 1988.

These are the salient facts which have been established in the record on which the claim of nondischargeability based on § 523(a)(2)(A) is asserted. This section of the Code provides as follows:

### § 523. EXCEPTIONS TO DISCHARGE

(a) A discharge under section 727.... of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;....

It is well established that courts narrowly construe exceptions to discharge against a creditor and in favor of the Debtor. *In re Cohen,* 47 B.R. 871 (Bkrtcy.S.D.Fla. 1985); *In re Mart,* 87 B.R. 206 (Bkrtcy.S.D. Fla.1988). It is equally true that the quality of the proof required to sustain a claim of nondischargeability is clear and convincing evidence. *In re Booth,* 70 B.R. 391 (Bkrtcy.Colo.1987) and *In re Martin,* 88 B.R. 319 (Colo.1988). It is equally axiomatic that before a claim of nondischargeability should be considered, it must be established that the Debtor is, in fact, indebted to the creditor who challenges the debtor's right to obtain a discharge. A liability of a debtor to a creditor generally is either

based on a contract or on some theory of a tort. There is nothing in this record which indicates that this Debtor ever became liable to the Plaintiffs on the basis of a contract. The contract to purchase the mobile home in question was a contract between the Plaintiffs and the corporation, Tom's Mobile Homes, Inc. This Debtor never had any contractual relationship with this individual Debtor and there is nothing in this record to show that he individually guaranteed the performance of this contract and thus, could be held liable for the breach of same.

The only other possible alternate theory of liability might be based on a tort, particularly based on fraud. There is no question that one who obtains money or property by false pretenses, misrepresentations or by actual fraud could be held legally liable to the creditor from whom the monies were obtained. The second difficulty with the Plaintiffs' case becomes evident when one considers this aspect of the case. There is not a scintilla of evidence in this case to show that this Debtor individually obtained any monies from the Plaintiffs nor that he made any misrepresentations or a false pretense. The corporation paid, as noted earlier, close to $34,000 in order to set up the mobile home for the Plaintiffs which included the cost of acquisition of the lot, payment for the mobile home which was under a floor-plan arrangement and paid for the other amenities which the Plaintiffs received. The balance of the monies obtained from the Plaintiffs according to the testimony was used to pay general operating expenses of the corporation. There is nothing in this record which warrants the conclusion first that this individual Debtor obtained any funds individually or used any of the funds individually for his own benefit. Neither is there evidence in this record to support the finding that this Debtor obtained the funds from the Plaintiffs by false pretenses, misrepresentation or actual fraud, knowing that Tom's either will not be able to perform the contract completely, nor that when it entered into the contract the Debtor, Tom's, and did not intend to perform the contract. The evidence indicates totally in the opposite direction. Compare *Ford Motor Credit Co. v. Owens*, 807 F.2d 1556 (11th Cir. 1987); and *John P. Maguire & Co. v. Herzog*, 421 F.2d 419 (5th Cir.1970).

In sum, the Plaintiffs have failed to establish the requisite degree of proof in any of the operating elements of a claim of nondischargeability based on § 523(a)(2)(A) and, therefore, the Complaint shall be dismissed with prejudice.

A separate Final Judgment will be entered in accordance with the foregoing.