In re Theodore ESSRES and Margaret Essres, Debtors.

Sam NEWTON, Plaintiff,

v.

Theodore ESSRES and Margaret Essres, Defendants.

Bankruptcy No. 89 B 15512 A. Adv. No. 90 D 0309.

United States Bankruptcy Court, D. Colorado.

Dec. 13, 1990.

Daniel T. Moyle, Jr., Mary A. Wollard, Daniel T. Moyle, Jr., P.C., Wheat Ridge, Colo., for plaintiff.

J. Matthew DePetro, Miller & Leher, Littleton, Colo., for defendants.

## ORDER

DONALD E. CORDOVA, Bankruptcy Judge.

THIS MATTER came before the Court on October 23, 1990 for trial on the Plaintiff's Complaint against the Defendants (Debtors) objecting to discharge pursuant to 11 U.S.C. § 727(a)(2)(A), § 727(a)(4)(A), and § 727(a)(3). Following the presentation of evidence by both parties, the Court found in favor of the Debtors on the Plaintiff's claims under § 727(a)(3) and § 727(a)(4)(A). The Court made oral Findings of Fact and Conclusions of Law regarding those claims and incorporates them herein. The Court now considers the Plaintiff's objection under § 727(a)(2)(A). The Court hereby makes the following Findings of Fact and Conclusions of Law based on the testimony, exhibits and pleadings:

1. Debtors filed a joint voluntary petition under Chapter 7 of Title 11 on November 15, 1989.

2. The Plaintiff, Sam Newton, is a judgment creditor of the Debtors, having obtained judgments on October 16, 1989, in the aggregate amount of $256,002.00.

3. The Debtors filed a Statement of Affairs as part of their petition in bankruptcy, wherein co-Debtor Mr. Essres listed his ownership interest in C.G. & E. Associates, a partnership, and Essres Realty and Insurance, Inc., a closely held real estate brokerage corporation. He owned 50% of the corporate stock and his sister owned the remainder.

4. In the Statement of Financial Affairs, in response to question 12(b), Debtors listed a transfer of personal property to their two children in March, 1989, for $800.00. The property listed as transferred consisted of:

(1) 4020 John Deere Tractor (Serial # SN213P120093R)

(1) 1020 John Deere Tractor (Serial # 096095T)

(1) 6 foot weed cutter, John Deere

(1) Post Hole Digger, John Deere

(1) Spring tooth harrow, John Deere

(1) Box scraper, John Deere

(2) Snowmobiles, Scorpions

(1) Trailer for snow mobiles

(1) Ranger Bass Boat, 18½ foot with trailer

(1) Hillsbro Flatbed trailer, 24 foot

(1) Snow Blower, Fair

5. The Debtor, Mr. Essres, valued this property at $52,000.00 in his Personal Financial Statement dated June 14, 1987.

6. The Debtors amended their Schedules after the initial § 341 meeting to reflect that the transfer to the children occurred on March 15, *1988* rather than 1989.

At trial, they furnished a Bill of Sale dated March 15, 1988 as evidence of the transfer.

7. The Debtor, Mr. Essres, admitted that he transferred the personal property to his children for less than its value, and that he would not have sold it for $800.00 to anyone else.

8. The personal property, other than that which has been sold, remains on the Debtors' property where it was located before the transfer. The children live with the Debtors, as does the daughter's husband. The daughter was married in March of 1989 and is 25 years of age. The son is a college student.

9. Mr. Essres testified he transferred five horses to his daughter and son pre-petition in 1988. However, he listed the horses in his Schedule of Assets as being held for his daughter. The five horses were valued at approximately $22,500.00. The horses are presently stabled on the Debtors' property, as they were before the transfer. Some of the horses have been sold.

10. The Debtors' 1987 Federal Income Tax Return reflects that the Debtors claimed all of the business expenses related to these horses as a tax deduction, even though the Debtor testified that he owned only a one-half partnership interest in the horses in 1987. He testified that his daughter owned the other half of the partnership interest. There are no partnership documents nor have partnership tax returns ever been filed.

11. The Debtors filed their 1988 Federal Income Tax Return in February of 1990. They did not claim the operating expenses for the horses as a deduction in that return, but they did claim a depreciation expense for the horse barn which is on their jointly owned 20 acres of property. Mr. Essres testified that the deduction is related to the operation of the horse business which he claims he transferred to his daughter in 1988. He acknowledged that the tax deduction should not have been taken since he no longer had an ownership interest in the horses.

## MERITS

11 U.S.C. § 727(a)(2)(A) provides, in pertinent part, as follows:

**Discharge.**

(a) The court shall grant the debtor a discharge, unless—

. . . .

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition . . .

■ The burden of proof in an action under § 727 of the Code is on the party who filed the complaint. Bankruptcy Rule 4005. In a § 727(a)(2)(A) action, the Plaintiff must prove each of the following elements:

1. The act complained of was done at a time subsequent to one year before the date of the filing of the petition;

2. With intent to hinder, delay or defraud a creditor or an officer of the estate;

3. That the act was that of the Debtor or his duly authorized agent;

4. That the act consisted of transferring, removing, destroying or concealing any of the Debtor's property or permitting any of these acts to be done. *In re Booth*, 70 B.R. 391 (Bankr.D.Colo.1987); *In re Greenwalt*, 48 B.R. 804, 806 (Bankr.D.Colo. 1985).

■ There is a split of authority in this district regarding the required standard of proof. *In re Martin*, 88 B.R. 319 (D.Colo. 1988) and *In re Booth*, 70 B.R. 391 (Bankr. D.Colo.1987) hold that the requisite proof is by clear and convincing evidence. *Linnie Ann Ennis, et al. v. Eric R. Jahnke*, No. 88 F 1137 (D.Colo. Jan. 24, 1989) (unpublished opinion by Judge Finesilver) holds that a preponderance of the evidence is the correct standard. Judge Finesilver reached this conclusion by reference to the holding in *Farmers Co-op Ass'n. v.*

*Strunk,* 671 F.2d 391 (10th Cir.1982). *Farmers Co-op* was decided under the Bankruptcy Act but its analysis continues to be applied to cases under the Code. This Court adopts the position taken in *Jahnke.* It should be noted, however, that this Court's conclusions are supportable under either standard.

### A. Transfer of Property.

█ There is no dispute that the Debtors transferred personal property to their children. The Debtors initially listed the transfer as having occurred in March of 1989, which would have brought the transfer date within the parameters of § 727(a)(2)(A). However, following the § 341 creditors meeting, the Debtors amended their schedules and furnished a Bill of Sale showing the transfer date as March of 1988. The Plaintiff did not rebut this evidence by offering any proof to show that the transfer occurred at a time subsequent to one year before the date of the filing of the petition. As regards the transfer, the Plaintiff failed to prove a necessary element of a § 727(a)(2)(A) action.

### B. Concealment of Property.

█ The Plaintiff argues that the Debtors' transfer of personal property and the partnership interest amount to a concealment of the Debtors' property. The Plaintiff further asserts that even though the transfer took place more than one year prior to the bankruptcy filing, the concealment, which was done with the intent to hinder, delay or defraud creditors, was within the statutory one year time frame.

#### 1. *Transfers that Constitute Concealment.*

The Plaintiff relies on *In re Olivier,* 819 F.2d 550 (5th Cir.1987) for the proposition that a transfer made under certain circumstances can constitute a concealment for purposes of denying discharge under § 727(a)(2)(A). In the *Olivier* case, the Debtors transferred their family home to the Debtors' mother for consideration which was subsequently returned to the mother. The transfer occurred seven years prior to the filing of the petition in bankruptcy, but one month following an automobile accident which subjected the Debtors to the likelihood of a very substantial judgment for which they were underinsured. Following the transfer, the Debtors continued to live in the house, maintain the house, paid no rent and paid for the insurance on the property. In noting that the transfer had the character of a sham transaction, the Court held that "concealing property for purposes of § 727(a)(2)(A) can be accomplished by a transfer of title coupled with the retention of the benefits of ownership." *Id.* at 553. The *Olivier* court relied on the case of *Friedell v. Kauffman (In re Kauffman),* 675 F.2d 127, 128 (7th Cir.1981) which held that: "A concealment ... need not be literally concealed. The transfer of title with attendant circumstances indicating that the bankrupt continues to use the property as his own is sufficient to constitute a concealment."

In the instant case, evidence at trial revealed the following events took place subsequent to the alleged transfers:

1. The Debtors paid the registration fees for the flatbed and boat trailers in June of 1989;

2. The Debtors paid for the boat motor inspection in September of 1989;

3. An insurance claim check for damage done to the Bass boat was made payable to the Debtors and deposited to their personal checking account in August or September of 1989;

4. A check made payable to the Debtors from the sale of the snowmobiles was deposited to their personal checking accounts in October of 1989;

5. The Debtors applied for new titles to the transferred trailers on September 13, 1989; and

6. The Debtors paid the registration fees for the vehicles owned jointly with their children.

The Debtors also claimed depreciation expenses related to the operation of the horse business even though Mr. Essres claims he transferred his partnership interest to their daughter in 1988. These deductions were

claimed in the Debtors' 1988 personal tax return filed in February of 1990. They have not filed a 1989 tax return.

These facts show that after the alleged transfers, the Debtors continued to treat the property as their own. This Court holds that the transfers, coupled with the Debtors' continued use of the property and retention of ownership benefits, is sufficient to constitute a concealment.

### 2. The Doctrine of Continuing Concealment.

By its terms, § 727(a)(2)(A) only applies to a Debtor's concealment of property occurring within one year prior to bankruptcy. In this case the Debtors filed for bankruptcy on November 15, 1989, so the Plaintiff must prove that the Debtors' concealment of property, created by virtue of the March 1988 transfer, occurred within one year of November 15, 1989. Relying on the doctrine of continuing concealment, the Plaintiff argues that the Debtors' retention of the benefits of ownership of the allegedly transferred assets brings the concealment within the one year scope of § 727(a)(2)(A).

> Despite [the] seemingly absolute limitation [of § 727(a)(2)(A) ] on the timing of debtor's conduct, existing case law recognizes that a transfer, which occurred more than one year prior to the petition, may warrant the denial of a discharge if the transfer is concealed or beneficial interests are retained into the magic one year period.

*In re Penner*, 107 B.R. 171, 173 (Bankr.N.D.Ind.1989). The "continuing concealment" doctrine is recognized in this district. *See, In re Serafini*, 113 B.R. 692 (D.Colo. 1990).

The facts are essentially undisputed. The horses and the personal property have remained on the Debtors' property and in their custody. Proceeds from the sale of some of the transferred property were paid directly to the Debtors and deposited in their personal accounts within one year prior to bankruptcy. The Debtors have treated the horses as their own by claiming deductions in their tax returns. The Debt-

ors have, from all outward appearances and by their own actions, continued to treat the property as their own. Despite Mr. Essres' testimony to the contrary, the Debtors have not in any appreciable sense treated the property any differently following the alleged transfer than they did prior to the transfer. This Court finds that the Debtors retained a significant beneficial interest in the property well into the one year statutory period.

### 3. Intent to Hinder, Delay or Defraud a Creditor.

The Court must now determine whether the transfer or concealment was done with the intent to hinder, delay or defraud creditors. The Debtors' intent is rarely susceptible to direct proof. Fraudulent intent may be established by circumstantial evidence, or by inferences drawn from a course of conduct. *Farmers Co-op Ass'n v. Strunk*, 671 F.2d 391 (10th Cir. 1982). Transfers to family members with little or no consideration can support a finding of a fraudulent transfer and evidence of the required intent. *In re Greenwalt*, 63 B.R. 555 (Bankr.D.Colo.1986). The fact that valuable property has been gratuitously transferred raises the presumption that such transfer was made with fraudulent intent. *In re Booth*, 70 B.R. 391 (Bankr.D.Colo.1987). "It is particularly suspect where debtor purports to transfer property but still enjoys the benefits of it." *Id.* at 397.

Again, the facts are essentially undisputed. The transfers were made to the Debtors' children for minimal or no consideration. The Debtors valued the personal property at $53,000.00 and the horses at $22,500.00. The consideration for the transfer of the personal property was $800.00; there was no consideration for the transfer of Mr. Essres' interest in the horse business. As discussed above, the Debtors continued to enjoy the benefits of ownership in both the personal property and the horse business after the purported transfers.

The Court is mindful of the fact that § 727 should be construed liberally in favor

of the Debtor and strictly against the creditors. However, the Court is satisfied, given all of the evidence in the case, that the Debtors' transfer was nothing more than an attempt to conceal their property with the intent to hinder, delay or defraud their creditors. The Debtors were defendants in several lawsuits prior to filing bankruptcy. Their schedules reflected secured debts in excess of $1.6 million and unsecured debts of approximately $150,000.00. Their litigation, coupled with their other financial problems during this relevant period of time, compels this Court to conclude that the Debtors desired to conceal this property from their creditors by making a "pretend transfer." The Debtors' retention and use of the property constituted a significant beneficial interest to them and is consistent with a "continuing concealment" sufficient to support a bar to discharge under § 727(a)(2)(A).

The Court feels compelled to comment on the Essres' credibility. Although the Court has previously ruled that the Plaintiff failed to prove that the Debtors made a false oath in preparing their bankruptcy schedules, this does not preclude the Court from noting the many contradictions, omissions and discrepancies in the Debtors' Schedules. There are so many that the Court may have been too hasty in dismissing the § 727(a)(4)(A) claim.

The Debtors failed to list seven bank accounts which they used in the two years prior to filing their petition in bankruptcy. They used these accounts for personal and business transactions to keep the money from their creditors. This information was requested of them in the Statement of Financial Affairs.[1] They failed to list as assets two vehicles which they jointly owned with their children. Most significantly, Mr. Essres failed to list a $200,000.00 shareholder loan he made to Essres Realty Co. because he believed it to be worthless. The evidence disclosed, however, that he off-set real estate commissions he owed to the Essres Realty Company against this so-called worthless debt. These commissions could properly be construed to be assets of the estate, but he kept them for his own use. Based on the Debtors' conduct the Court concludes that neither Debtor is credible.

In conclusion, this Court holds that the transfer of the horses and personal property were sham transactions. In reality, the Debtors maintained control over these assets and retained the benefits of ownership while concealing these assets from creditors. This concealment continued into the year prior to bankruptcy, and the Debtors acted in concert with an intent to hinder, delay or defraud their creditors.

THEREFORE, IT IS THE ORDER OF THE COURT that the Debtors' are denied discharge under § 727(a)(2)(A).

---

1. "4(a). What bank accounts have you maintained, alone or together with any other person and in your own or any other name within the two years immediately preceding the filing of the original petition herein."