In re Merton E. PETERS, Jr. d/b/a P & P Construction Co., Debtor.

Harry R. NELSON and Marjorie J. Nelson, Plaintiffs,

v.

Merton E. PETERS, Jr., Defendant.

Bankruptcy No. 88–12276–JNG.
Adv. No. 89–1106.

United States Bankruptcy Court,
D. Massachusetts.

Oct. 5, 1989.

Michael B. Feinman, Andover, Mass., for plaintiffs.

Stuart M. Holber, Phillips Gerstein Holber LaFlamme Migliori & Barron, Haverhill, Mass., for defendant.

MEMORANDUM

JAMES N. GABRIEL, Chief Judge.

INTRODUCTION

On March 27, 1989, Harry R. Nelson and Marjorie J. Nelson filed the above captioned adversary complaint against Merton E. Peters, Jr., d/b/a P & P Construction Co. (the "Debtor"). The Nelsons, through a four count complaint, seek to deny the Debtor his discharge pursuant to sections 727(a)(2)(A), (a)(2)(B), (a)(4) and (a)(5) of the Bankruptcy Code. Section 727 provides in relevant part:

(a) The court shall grant the debtor a discharge, unless— ...

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed-

(A) property of the debtor, within one year before the date of the filing of the petition; or

(B) property of the estate, after the date of the filing of the petition; ...

(4) the debtor knowingly and fraudulently, in or in connection with the case-

(A) made a false oath or account;

(B) presented or used a false claim;

(C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or

(D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs;

(5) the debtor has failed to explain satisfactorily, before determination of de-

nial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities;....

11 U.S.C. § 727(a).

## FACTS

The Court conducted an evidentiary hearing on August 10, 1989 at which time eight witnesses testified and a total of 13 exhibits were admitted into evidence. The following facts emerged.

The Debtor, a building contractor, who did business as P & P Construction Co., filed a voluntary Chapter 7 petition on November 22, 1988. On January 23, 1989, the Debtor filed an amendment to his Schedules and Statement of Affairs. The amendment to Schedule B-2 was a list of "tool and equipment inventory" made up of 34 categories of tools (e.g., 2 skill saws (1 broken), 1 sawsall (broken), 2 hammers, etc.). The amendment to the Debtor's Statement of Affairs included 1) disclosure of two bank accounts in the name of the Debtor and his wife, which the Debtor had failed to list in his original petition; and 2) the statement, "I have made personal withdrawals from the business in the preceding year in the approximate amount of $12,000.00." The Debtor's original petition and Schedules and Statement of Affairs were admitted into evidence, as well as the amendment that was filed with the Bankruptcy Court on January 23, 1989.

On March 3, 1989, counsel to the plaintiffs conducted a Bankruptcy Rule 2004 examination of the Debtor. The Debtor initially testified that he never used business funds for gifts and other personal expenses. However, the Debtor later modified his testimony when he was confronted with business records belying his original statement. Additionally, the Debtor was questioned about tools and equipment used in his business. The Debtor repeatedly indicated that certain tools that were not listed on his original schedules or the amendment were broken, lost or stolen. Finally, the Debtor was questioned about motor vehicles he owned within three years of the filing of his petition. Except for a dump truck and a 1977 Chevrolet Blazer which the Debtor listed on Schedule B-2, the Debtor stated he had not owned any other motor vehicle in the three years preceding his bankruptcy. The transcript from the Debtor's 2004 examination was admitted into evidence.

During the course of the trial, insufficient evidence was introduced to substantiate the plaintiffs' allegations that the Debtor, with an intent to hinder, delay or defraud creditors, transferred or concealed tools and equipment or failed to explain satisfactorily the loss of certain items of equipment. Although Steve DeFusco ("DeFusco"), a carpenter who worked with the Debtor between 1985 and 1987, testified that the Debtor was in possession of tools and equipment during the period of his employment that were not listed on the Debtor's schedules, DeFusco was unable to testify that the Debtor actually owned tools and equipment in March of 1989 that were omitted from his schedules.

Likewise, the evidence introduced was insufficient for the Court to find that the Debtor knowingly and fraudulently made a false oath or account with respect to his business accounts and gifts from his business accounts. Although the Court cannot commend the Debtor for his forthright testimony, meticulous bookkeeping or the fastidiousness with which he cared for his tools, the testimony simply did not unequivocally establish intentionally fraudulent conduct on the Debtor's part with respect to the tools and business records.

However, the evidence submitted to the Court with respect to a 1973 Chevrolet Corvette warrants close scrutiny. The Debtor testified that he sold the Corvette to Paul Marion ("Marion") of Londonderry, New Hampshire in November of 1985. The Debtor indicated that Marion was a mechanic who worked on motor vehicles belonging to the Debtor and his family. According to the Debtor, the Corvette was conveyed to Marion in exchange for the forgiveness of amounts outstanding for repair bills. However, the Debtor testified that Marion permitted him to drive the car after the sale, although the Debtor denied that he and Marion were anything more

than business friends. The Debtor also testified that it was his understanding that Marion would resell the car to him when and if he obtained the money necessary to satisfy Marion, and that he had the right to buy back the car. At the time of trial, there was no bill of sale or other paper work to document this transaction.

Paul Marion testified that he first met the Debtor when the two worked on a rescue team. He stated that at the time the Debtor sold him the Corvette, the Debtor owed him approximately $4,000-$5,000. He indicted that he took possession of the car in mid-1986, but did not register it in New Hampshire until January 1989 after the Debtor's bankruptcy petition was filed. Marion stated that he kept the car under a tarp at his house until he decided to sell it. Marion indicated that he sold the car five or six months before the trial, but he was unable to recall the name of the individual to whom he sold the car. Marion said he received $7,000 in cash from the buyer but did not deposit the money in a bank account. He testified he used the money to pay bills and buy groceries. He could not remember what bills he paid. Although Marion testified that he gave the unidentified buyer of the Corvette a bill of sale, he indicated that he did not cancel the registration on the car. A copy of the bill of sale was not produced.

Steve DeFusco testified that contrary to the assertions made by Marion and the Debtor, the two men appeared to be friends and socialized together, at least during the period when he worked for the Debtor. DeFusco also revealed that the Debtor was much enamored with the Corvette. DeFusco's testimony about the Debtor's pride in the Corvette was corroborated by several other witnesses.

June G. Thorton ("Thorton") testified that she approached the Debtor in the fall of 1985 about satisfying a debt in the amount of at least $10,000 that Peters owed to her from the sale of certain real estate. Thorton said that she wanted the Debtor to turn the car over to her but the Debtor refused, stating that the value of the Corvette was in excess of what he owed her. Thorton stated she was willing to give the Debtor the difference between the value of the car and the amount of the debt. When the Debtor was questioned about Thorton's offer, he testified that she was lying.

The Debtor's wife was the final witness. She admitted that in April of 1988 she made out a check to the City of Haverhill in the amount of $13.75 with the notation, "Reg # 180KHH." This sum represented the amount of the excise tax due on the Corvette. . Although Mrs. Peters testified that she thought she was paying the excise tax on the couple's Blazer, the excise tax bill for the Corvette shows the model year as 1973, whereas the Blazer is a 1977 model.

## DISCUSSION

The plaintiffs in this adversary have the burden of proving their objections to the Debtor's discharge. *See* Bankruptcy Rule 4005. However, Bankruptcy Rule 4005

does not address the burden of going forward with the evidence. Subject to the allocation by the rule of the initial burden of producing evidence and the ultimate burden of persuasion, the rule leaves to the courts the formulation of rules governing the shift of the burden of going forward with the evidence in the light of considerations such as the difficulty of proving the nonexistence of a fact and of establishing a fact as to which the evidence is likely to be more accessible to the debtor than the objector.

Advisory Committee Note (1983) to Bankruptcy Rule 4005 (citations omitted).

The provisions of section 727 are to be construed liberally in favor of honest debtors, a policy consistent with the presumption that all debts are dischargeable unless specifically excepted by the Bankruptcy Code. *See In re Tully*, 818 F.2d 106, 110 (1st Cir.1987) and cases cited therein. Accordingly, the plaintiffs must sustain their burden of proof by clear and convincing evidence, a rule in keeping with the balance between the fresh start policy and that of making sure that those who seek the pro-

**4**

tection of the Bankruptcy Code do not play fast and loose with their assets or statements of their affairs. *In re Berman,* 100 B.R. 640, 645 (Bankr.E.D.N.Y.1989); *In re Mayo,* 94 B.R. 315, 333 (Bankr.D.Vt.1988); *In re Cutignola,* 87 B.R. 702 (Bankr.M.D. Fla.1988); *In re Roberts,* 81 B.R. 354 (Bankr.W.D.Pa.1987).

▉ In order to sustain an objection under section 727(a)(2), the plaintiff must show-

> (1) that the act complained of was done at a time subsequent to one year before the date of the filing of the petition;
> (2) with actual intent to hinder, delay or defraud a creditor or an officer of the estate charged with custody of property under the Bankruptcy Code:
> (3) that the act was that of the debtor or his duly authorized agent; and
> (4) that the act consisted of transferring, removing, destroying or concealing any of the debtor's property, or permitting any of these acts to be done.

4 *Collier on Bankruptcy* ¶ 727.02 at 727–11 (15th ed. 1989).

With respect to the intent requirement, a debtor is unlikely to testify as to his intent. Accordingly, the Court must draw inferences from all the facts and circumstances and may look to certain "badges of fraud" as further evidence of the requisite intent. *In re Berman, supra* at 646. With respect to section 727(a)(2) transfers, courts have identified the following badges of fraud:

> (1) lack or inadequacy of consideration;
> (2) the family, friendship or close associate relationship between the parties;
> (3) the retention of possession, benefit or use of the property in question, although title exists in another entity;
> (4) the financial condition of the party sought to be charged both before and after the transaction in question;
> (5) conveyance of all of the debtor's property;
> (6) secrecy of the conveyance;
> (7) existence of a trust or trust relationship between the debtor and the person to whom the property was conveyed;
> (8) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring debt, onset of financial difficulties, or pendency or threat of suit by creditors;
> (9) the instrument affecting the transfer suspiciously states that it is in fact bona fide;
> (10) the debtor makes a voluntary gift to a family member; and
> (11) the general chronology of events and transactions under inquiry.

*Id.*

With respect to the requirement that the act complained of must occur within one year of the filing, the court in *In re Smith,* 11 B.R. 20 (Bankr.N.D.Ohio 1981), explained the theory of continuing concealment, a theory that this Court must accept and apply if the plaintiffs are to prevail. The court stated:

> Concealment has generally been defined as the transfer of legal title to property to a third party with the retention of a secret interest by the Bankrupt.... However, if the transfer is absolute, even if it defrauds the creditors, the transfer cannot bar discharge. *In Re Hammerstein,* 189 F. 37 (2d Cir.1911); *In re Vecchione,* 407 F.Supp. 609 (E.D.N.Y.1976).
>
> It should be noted that, following these decisions, this court is not holding that all debtors can transfer their property subject to security interests and forever shield themselves from their creditors. The court in *Thompson v. Eck,* 149 F.2d 631 (2d Cir.1945), held that a bankrupt must retain some legal interest in property before he can be charged with its concealment and preclude his discharge. *See also [In re] Groth,* [36 F.2d 41 (7th Cir.)] *supra.* The court in the case of *In re Vecchione supra,* clarified this position by indicating that even though the bankrupt had transferred legal title to his automobile, the fact that he continued to use and thus derive an equitable benefit from the property constituted continuing concealment. Therefore, in cases where the plaintiff can prove that the debtor retained control or an equitable

interest in the property, the courts have appropriately denied discharge under the theory of continuing concealment.

*Id.* at 22. *See also In re Olivier,* 819 F.2d 550 n. 4 (5th Cir.1987); *In re Ries,* 22 B.R. 343, 345 (Bankr.W.D.Wis.1982).

Applying these precepts to the facts of this case, the Court finds the existence of certain badges of fraud, namely those identified as nos. 2, 3, 6, 7, and 11 in the *Berman* case. Accordingly, the Court rules that the Debtor concealed and continued to conceal his Corvette from his creditors from the fall of 1985 with the intent to hinder, delay or defraud his creditors. The Court finds that once the plaintiffs produced evidence of the payment of the 1988 excise tax coupled with the Debtor's admission that he continued to have the use of the car after the alleged transfer to Marion, the Debtor was required to come forward with more persuasive evidence than simply his testimony and that of Marion. Stated another way, the Court finds the Debtor's and Marion's testimony to be unbelievable. Specifically, the Court did not believe that Marion and the Debtor were merely business acquaintances. Marion indicated that their relationship went back a number of years to a time when the two worked together on a rescue team. Moreover, given the fact that Marion did thousands of dollars worth of work on the Debtor's vehicles prior to the alleged sale, the fact that the Debtor's schedule of current expenditures shows vehicle maintenance expenditures of $250 per month, and DeFusco's testimony about the relationship, the Court concludes that the relationship between the two men was close and involved more than just business. Moreover, the Court is troubled by the complete absence of any records or bills substantiating the amounts the Debtor owed Marion or the transfer of legal title to him. Since the Debtor refused to convey the Corvette to Thorton in satisfaction of a debt admitted to be at least $10,000 because the value of the car exceeded that amount, despite her offer to reimburse him for the difference, the Court can only conclude that any transfer to Marion was based on friendship and the understanding that the car would be held for the Debtor's use and reconveyed to the Debtor at some later more convenient point in time. Additionally, the lack of any documentation of the transfer and registration prior to January 1989 when Marion registered the car in New Hampshire and the payment of the 1988 excise tax leads to one conclusion: that the conveyance was not permanent.

The Court was impressed with Thorton's testimony and found her story to be credible. As a result, the Debtor's dismissal of her as a liar simply reinforced the Court's own serious doubts about the Debtor's veracity. Finally the Court simply found Marion's story about the recent sale of the Corvette to be absurd. Marion's total inability to recall any specific details about the sale and what he did with the proceeds leads the Court to believe no sale took place.

In accordance with the foregoing, the Court hereby enters judgment in favor of the plaintiffs and against the Debtor on Count I. Since judgment on this Count results in the denial of the Debtor's discharge, the Court need not consider the remaining counts in depth. It is sufficient to observe that the same set of facts support judgment in favor of the plaintiffs on Counts II through IV.