**In re Robert H. LIGHTFOOT, Sr., Debtor.**

**CULLEN CENTER BANK & TRUST, Plaintiff,**

v.

**Robert H. LIGHTFOOT, Defendant.**

No. 91–47431–H5–7.
Adv. No. 92–4324.

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

March 18, 1993.

---

142

it is considered on its merits, this amended order is appropriate.

Before the Court is Plaintiff's Complaint to bar the discharge of debtor, Robert H. Lightfoot, Sr. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334 and 157(a), and by the district court's general order or reference. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (H), and (J).

After considering the testimony, evidence, and law, this Court makes the following Amended Findings of Fact and Conclusions of Law:

## I.

### Findings of Fact

1. Debtor filed this case under Chapter 7 on September 13, 1991.

2. All debtor's unsecured creditors listed on the debtor's Schedule A–3 are holders of claims that arose between 1971 and 1981 in connection with the debtor's failed plumbing business.

3. That company known as the Robert H. Lightfoot Company ("Lightfoot Company"), a sole proprietorship, conducted business from 1970 to about 1980.

4. The Lightfoot Company was a contracting company engaged in, among other things, commercial plumbing and the installation of fire extinguishing systems.

5. The Lightfoot Company failed sometime between 1979 and 1981, and Debtor was unemployed for about one year.

6. The debtor married Carolyn Andrews (now known as Carolyn Lightfoot) on May 10, 1980. At the time of the marriage, Carolyn Andrews had separate funds which she continued to maintain in separate accounts under her own name after the marriage.

7. Creditor, in its complaint, did not plead the issues of ownership or scheduling of the two corporations, but did introduce evidence on these issues at trial. However, no trial amendment was formally filed by creditor.

Edward M. Peine, Houston, TX, for debtor, defendant.

Michael J. Durrschmidt, Hirsch & Westheimer, Houston, TX, for plaintiff.

## AMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW

KAREN KENNEDY BROWN,
Bankruptcy Judge.

Debtor filed a motion for reconsideration and for clarification after the Court issued the Findings of Fact and Conclusions of Law in this case. After due consideration, this Court concludes that this amended order should be entered. Cullen Bank's responsive motion was untimely, but even if

8. On January 20, 1981, Carolyn Andrews Lightfoot incorporated Nu–Way Filter Company ("Nu–Way") in the State of Texas. Carolyn Andrews Lightfoot funded Nu–Way exclusively with her separate property. Debtor never invested any of his separate property in Nu–Way. Debtor never invested any community funds in Nu–Way.

9. On February 13, 1981, Carolyn Andrews Lightfoot incorporated Chero–Key Piping Company ("Chero–Key"), a Texas corporation. (Nu–Way and Chero–Key are collectively referred to herein as the "Corporations"). Carolyn Andrews Lightfoot funded Chero–Key exclusively with her separate property. Debtor never invested either his separate property or community assets in Chero–Key.

10. Debtor was employed at Chero–Key after 1981.

11. Chero–Key was begun for the purpose of installing fire extinguishing systems.

12. Prior to the creation of Chero–Key, the Lightfoot Company was engaged in the installation of fire extinguishing systems and plumbing contracting business.

13. Carolyn Lightfoot relied upon the debtor's talents and expertise in starting Chero–Key.

14. The debtor was not supervised in his employment at Chero–Key.

15. Nu-Way was set up to sell the same filters previously sold by the Lightfoot Company.

16. Debtor now runs Nu–Way.

17. The debtor is the sole employee of Nu–Way.

18. The debtor, as the sole employee of Nu–Way, designs and estimates jobs for Chero–Key which is engaged in the installation of fire extinguishing systems.

19. Debtor is paid as an independent contractor by Nu–Way and Chero–Key. Payment for his services comes from Chero–Key to Nu–Way to debtor although some checks go directly from Chero–Key Piping to debtor.

20. The source of Nu–Way's funding is from Chero–Key. All operating deficiencies are made up from Mrs. Lightfoot's separate property.

21. All of the decisions about how much to pay Nu–Way and how much to pay debtor are made by Mrs. Lightfoot.

22. Mrs. Lightfoot decides, based on available cash flow, whether and how much debtor should receive from Chero–Key or Nu–Way.

23. The debtor has check signing authority on both Chero–Key and Nu–Way accounts, including payroll. He has signed such checks recently, including checks to himself, Mrs. Lightfoot, and others.

24. He is an officer of Chero–Key and the president of Nu–Way.

25. Prior to incorporating Nu–Way, Mrs. Lightfoot had no experience selling filters which was the sole business of Nu–Way.

26. Nu-way has one asset with a worth of approximately $500. Chero–Key has no assets.

27. Mrs. Lightfoot is and has been a licensed real estate broker for the past fifteen (15) years.

28. Mrs. Lightfoot has continuously worked as a real estate broker during the past ten years for real estate firms.

29. Prior to incorporating Chero–Key, Carolyn Andrews Lightfoot had no experience with fire extinguisher systems or fire sprinkling systems.

30. She had never incorporated a business before.

31. Although the corporations relied upon the expertise of the debtor and Mr. Presnell, neither ever owned any stock in Chero–Key or Nu–Way.

32. On June 13, 1983, debtor transferred the sailboat at issue, the *Carolina Wind*, to his wife, Carolyn, for "one dollar and other good and valuable consideration." This transfer was recorded with the U.S. Coast Guard on November 10, 1983.

33. Debtor had owned this boat since 1977.

34. Mrs. Lightfoot paid nothing for title to the boat. At the time of the transfer the boat was worth $15,000.00.

35. Transfer of the boat had no effect upon the debtor with regard to the use of the sailboat. No one sails the boat without the debtor at the helm. However, it would be imprudent to sail without someone on board who was an expert in the operation of a boat of this size and complexity.

36. The fair market value of the *Carolina Wind* is $35,000.00 to $40,000.00 now.

37. In the summer of 1989, debtor answered certain interrogatories propounded by counsel for debtor's ex-wife, who was also counsel for creditor Cullen Center, in connection with this debt.

38. In the summer of 1989, as a result of debtor's answers to these interrogatories, creditor Cullen became aware of debtor's use of and potential interest in the boat. Creditor Cullen then abstracted its judgment with the U.S. Coast Guard against the *Carolina Wind* on September 18, 1989. (Plaintiff Ex. 20).

39. At the time of the transfer of the boat to Mrs. Carolyn Andrews Lightfoot, there were numerous unsecured creditors.

40. Those creditors are the same ones which are currently listed in Schedule A–3.

41. All of the debts were in Mr. Lightfoot's name.

42. The debts were the result of the operation of the Lightfoot Company.

43. Cullen Bank obtained its judgment against debtor on December 14, 1982. Several other creditors also took judgments against debtor before the transfer of the boat occurred.

44. In fact, Cullen abstracted its judgment in the Harris County Real Property Records less than three weeks prior to the transfer.

45. At the time the boat was transferred, Mrs. Lightfoot agreed to make repairs on the boat in excess of $26,000. She would not fund the repairs unless debtor transferred the boat to her.

46. During 1986, debtor and Mrs. Lightfoot separated for a length of time.

47. During the separation, debtor ran Chero–Key.

48. During the separation, debtor filed an assumed name certificate regarding Chero–Key.

49. During the separation, debtor retained exclusive possession of the boat.

50. During that time, Mrs. Lightfoot did not go to Chero–Key's offices on a regular basis. She maintained contact by telephone.

51. The Agreed Temporary Order entered in the 1986 divorce proceeding brought by Carolyn Lightfoot against the debtor granted the exclusive use and possession of the boat and the authorization for the debtor to make expenditures and incur indebtedness in the usual and ordinary course of conduct in the business known as Chero–Key Plumbing and Nu–Way.

52. In the Agreed Temporary Order (i) the debtor was awarded his personal property, his separate residence; and (ii) the debtor was awarded the sole operation and control of the corporations.

53. Debtor receives virtually nothing for his work unless profits come in. Therefore, debtor receives no salary. Instead, he receives money from the corporations as an independent contractor from time to time. Debtor's primary income is through disability payments.

54. Debtor filed his statement of affairs and schedules with the bankruptcy court under penalty of perjury, stating that he neither owned, nor had any interest in the boat at the time of filing.

55. All findings of fact which are deemed to be conclusions of law should be considered as conclusions of law. All conclusions of law considered findings of fact should be so viewed.

## II.

### Conclusions of Law

1. A debtor is entitled to a discharge unless:

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition . . .

11 U.S.C. § 727(a)(2)(A).

2. Further, a debtor is not entitled to a discharge if "the debtor knowingly and fraudulently, in or in connection with the case . . . made a false oath or account." 11 U.S.C. § 727(a)(4)(A).

■ 3. All complaints objecting to discharge are strictly construed against creditors in order to effectuate the debtors' fresh start. *In re Ellingson*, 63 B.R. 271, 276 (Bankr.N.D.Iowa 1986); Fed.Rule Bankr.Procedure 4005.

■ 4. A showing by a creditor that the debtor intended to defraud one creditor is enough to deny discharge under 11 U.S.C. § 727(a)(2)(A). *In re Adeeb*, 787 F.2d 1339, 1343 (9th Cir.1986).

5. Whether the transfer injured a creditor is irrelevant. *Id.; In re Smiley*, 864 F.2d 562, 569 (7th Cir.1989).

### Burden of Proof

■ 6. In 1991, the United States Supreme Court held that the appropriate standard of proof in 11 U.S.C. § 523 matters is the preponderance of the evidence standard. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

■ 7. The rationale employed by the Supreme Court in *Grogan* applies as well in 11 U.S.C. § 727 proceedings. *First Nat'l. Bank v. Serafini*, 938 F.2d 1156, 1157 (10th Cir.1991); *In re Cook*, 126 B.R. 261, 265 (Bankr.E.D.Tex.1991).

8. The Tenth Circuit stated " . . . we perceive no good reason to apply a different standard where § 727(a)(2) is involved. It would be incongruous to apply a 'preponderance of the evidence' standard to § 523(a) and a 'clear and convincing' standard to § 727(a)(2). Such would be clearly at odds with the rationale in *Grogan.*" *Serafini*, 938 F.2d at 1157.

■ 9. Under 11 U.S.C. § 727, Cullen must prove the existence of each of the following elements:

i) That the transfer of property occurred;

ii) That the property transferred was owned by the debtor;

iii) That the transfer occurred within one year before the date the bankruptcy petition was filed; and

iv) That the defendant had, at the time of the transfer, the intent to defraud a creditor.

*Cook*, 126 B.R. at 266; *In re Ford*, 53 B.R. 444, 446 (W.D.Va.1984) (quoting *In re Reed*, 18 B.R. 462, 463 (Bankr.E.D.Tenn. 1982)); 4 Collier on Bankruptcy ¶ 727.02 at 727–11 (15th Edition 1990).

### Concealment

■ 10. Cullen concedes that the alleged transfer or gift of the boat from the debtor to Carolyn occurred in June of 1983. Debtor filed bankruptcy on September 13, 1991. However, in this circuit, "transfer of title to property while retaining benefits of ownership constitutes concealment within the purview of Section 727(a)(2)." *In re Sanders*, 128 B.R. 963, 969 (Bankr.W.D.La. 1991) (citing *In re Olivier*, 819 F.2d 550, 555 (5th Cir.1987)); *In re Kauffman*, 675 F.2d 127, 128 (7th Cir.1981).

11. Concealment as used in Section 727(a)(2) "can be accomplished by a transfer of title coupled with the retention of the benefits of ownership." *In re Olivier*, 819 F.2d at 553; *see also In re Kauffman*, 675 F.2d at 128.

A concealment . . . need not be literally concealed. The transfer of title with attendant circumstances indicating that the bankrupt continues to use the property as his own is sufficient to constitute a concealment.

*Id.; see In re Olivier*, 819 F.2d at 553–55; *In re Sanders*, 128 B.R. at 970; *In re Hodge*, 92 B.R. 919, 922–23 (Bankr.D.Kan. 1988).

12. It is not the secrecy of the transfer but the retained beneficial interest that constitutes the concealment. *Sanders,* 128 B.R. at 970. The Fifth Circuit held that an exception to the one year limitation of 11 U.S.C. § 727(a)(2) is met when the debtor continues "the concealment of [his] secretly retained interest in the property." *Olivier,* 819 F.2d at 554–55.

■ 13. Once a debtor has made a fraudulent transfer of assets in violation of Section 727(a)(2), merely discussing the transfer or debtor's retained beneficial interest will not prevent denial of discharge. *In re Davis,* 911 F.2d 560, 562 (11th Cir. 1990); *In re Adeeb,* 787 F.2d 1339, 1345 (9th Cir.1986); *Sanders,* 128 B.R. at 971.

14. "[T]he concealment of an interest in an asset that continues, with the requisite intent, into the year before bankruptcy constitutes a form of concealment which occurs within the year before bankruptcy and, therefore, ... such concealment is within the reach of Section 727(a)(2)(A)." *In re Davis, supra* at 555.

15. Due to the continued use and enjoyment of the boat, the concealment continued "into the magic one year period." *In re Penner,* 107 B.R. 171 at 175 (Bankr. N.D.Ind.1989) (citing *In re Quackenbush,* 102 F. 282 (N.D.N.Y.1900)); *In re Vecchione,* 407 F.Supp. 609 (E.D.N.Y.1976); *In re Howard,* 55 B.R. 580, 584 (Bankr. E.D.N.C.1985).

16. Debtor argues that his disclosure of the 1981 boat transfer in his 1989 answers to interrogatories eliminated any concealment as of 1989. As a result, plaintiff abstracted a judgment against the boat in September 1989. Plaintiff never attached the *Carolina Wind* pursuant to that judgment.

17. However, debtor retained the benefits of the transfer, continued to use the boat, and made no attempt to retransfer the asset. As his primary nonexempt asset, it was incumbent on debtor to retransfer the boat so as to make it available for all creditors. Moreover, his disclosure was limited to plaintiff and debtor's ex-wife, his two most aggressive creditors. All creditors were not informed. Consequently, concealment continued into one year prior to bankruptcy.

**Intent**

■ 18. The debtor's intent to delay, hinder, or defraud is rarely susceptible to direct proof. *Cook,* 126 B.R. at 268; *In re Essres,* 122 B.R. 422, 426 (Bankr.D.Colo. 1990); *Penner,* 107 B.R. at 175.

19. The necessary "fraudulent intent may be established by circumstantial evidence or by inferences drawn from a course of conduct." *Cook,* 126 B.R. at 268 (quoting *Essres,* 122 B.R. at 426). *See also Penner,* 107 B.R. at 175.

■ 20. There are certain factors which courts have recognized as circumstantial evidence and inferences of the requisite fraudulent intent. *Cook,* 126 B.R. at 268; *Penner,* 107 B.R. at 175.

21. The factors or "badges of fraud" are:

i) lack or inadequacy of consideration;

ii) family, friendship, or other close relationship between transferor and transferee;

iii) retention of possession, benefit, or use of the property in question;

iv) financial condition of the transferor prior to and after transaction;

v) conveyance of all of debtor's property;

vi) secrecy of the conveyance;

vii) existence of trust or trust relationship;

viii) existence or cumulative effect of pattern or series of transactions or course of conduct after pendency or threat of suit;

ix) instrument affecting the transfer suspiciously states it is in fact bona fide;

x) debtor makes voluntary gift to family member; and

xi) general chronology of events and transactions under inquiry.

*Cook,* 126 B.R. at 268–69 (citing *Penner,* 107 B.R. at 175–76, and *Essres,* 122 B.R. at 426–27); *In re Peters,* 106 B.R. 1, 4 (Bankr.

D.Mass.1989) (citing *In re Berman,* 100 B.R. 640, 646 (Bankr.E.D.N.Y.1989)); *see also In re May,* 12 B.R. 618, 627 (N.D.Fla. 1980); *In re Clausen,* 44 B.R. 41, 44 (Bankr.D.Minn.1984); *In re Schmit,* 71 B.R. 587, 590 (Bankr.D.Minn.1987).

22. While just one of these factors is sufficient to find fraudulent intent, the accumulation of several factors indicates strongly that debtor possessed the requisite intent. *Cook,* 126 B.R. at 269; *Penner,* 107 B.R. at 176; *In re Butler,* 38 B.R. 884, 888 (Bankr.D.Kan.1984); *In re Titus,* 75 B.R. 256, 259–60 (Bankr.W.D.Mo. 1985); *In re Jacobs,* 60 B.R. 811, 814–16 (M.D.Pa.1985).

23. The transfer of the boat was for the consideration of $1 and "other good and valuable consideration." According to debtor, it was a gift (Factors i and xi).

24. The transfer of the boat was to debtor's wife (Factor ii).

25. According to debtor's own testimony, debtor retained possession and use of the boat (Factor iii).

26. Prior to the transfer of the boat, debtor faced numerous judgments and collection efforts (Factors iv and viii).

27. Debtor's only non-exempt asset at the time was the boat (Factor v).

28. However, the use of Carolyn Lightfoot's initials and her maiden name on the bill of sale did not necessarily show an attempt to conceal the asset. (Factor vi). Mrs. Lightfoot routinely kept separate property assets in her maiden name.

29. The transfer of the boat at or shortly after the entry of judgment in favor of Cullen demonstrates a transaction to avoid creditors (Factors viii and xii).

### Corporations

30. The corporations are presumptively community assets. Tex.Family Code § 5.02 (Vernon's 1992); *Cockerham v. Cockerham,* 527 S.W.2d 162 (Tex.1975); *Marriage of York,* 613 S.W.2d 764 (Tex. Civ.App.—Amarillo 1981).

31. To overcome the presumption that property possessed by either spouse during the marriage is community proper-

ty, one who asserts the property is separate must show by clear and convincing evidence that the property is separate in character. *Massey v. Massey,* 807 S.W.2d 391, 405 (Tex.App.—Houston [1st Dist.] 1991, no writ).

32. The community property presumption ceases to exist after positive evidence to the contrary is introduced. *Harris v. Harris,* 765 S.W.2d 798, 802 (Tex. App.—Houston [14th Dist.] 1989, writ denied); *Roach v. Roach,* 672 S.W.2d 524, 530 (Tex.App.—Amarillo 1984, no writ).

33. Testimony of a spouse, even if uncorroborated, may suffice to prove by clear and convincing evidence that property is the testifying spouse's separate property. *Newland v. Newland,* 529 S.W.2d 105 (Tex.App.—Fort Worth 1975, dismissed).

34. A premarital agreement is unenforceable against pre-existing creditors. Tex.Family Code § 5.41 (Vernon 1974).

35. Plaintiff alleges that creation of the two corporations by the wife to engage in business in which wife had no experience is an example of continuing concealment relying on the *Hodge* and *Penner* cases. *Hodge,* 92 B.R. 919; *Penner,* 107 B.R. 171. *Hodge* and *Penner,* however, are distinguishable from the present situation because *Hodge* and *Penner* involved more than the mere creation of new business entities. *Hodge* and *Penner* involved the *transfer of assets* from the husbands' defunct businesses to the wives' new businesses. *Hodge,* 92 B.R. at 921; *Penner,* 107 B.R. at 172. Creditor has failed to show any transfer of husband's assets to his wife's companies. Carolyn Lightfoot initially financed and continues to finance the companies from her separate funds. Retention of her husband as an officer or employee does not alter the corporations' status as separate property.

### Bankruptcy Schedules

36. Debtor failed to schedule the boat and has taken the untenable position that the boat is his wife's separate property.

37. Bankruptcy courts are courts of equity. *In re Global W. Dev. Corp.*, 759 F.2d 724, 727 (9th Cir.1985); *In re Madeline Marie Nursing Homes*, 694 F.2d 433, 436 (6th Cir.1982).

38. "[A] bankrupt must exercise great care to schedule his assets and names and addresses of ... his creditors properly." *King v. Harry*, 131 F.Supp. 252, 254 (D.D.C.1955).

39. To obtain a discharge debtor must conform to the requirements of the law. *Rice v. Matthews*, 342 F.2d 301, 303 (5th Cir.1965); *Hayslip v. Long*, 227 F.2d 550, 553 (5th Cir.1955).

40. The veracity of debtor's schedules is essential to the successful administration of the case. *In re Chalik*, 748 F.2d 616, 618 (11th Cir.1984); *Diorio v. Kreisler–Borg Constr. Co.*, 407 F.2d 1330, 1331 (2d Cir.1969).

41. Deliberate omissions, such as debtor's in this case, may result in the denial of a discharge. *Chalik*, 748 F.2d at 618; *see also In re Raiford*, 695 F.2d 521, 522 (11th Cir.1983) (citing *In re Mascolo*, 505 F.2d 274 (1st Cir.1974) (concealment of bank account)); 1A *Collier on Bankruptcy* § 14.27 at 1341 (14th ed. 1978) (debtor's false statement in his schedules of property that he has disclosed all his assets is a common example of a false oath preventing a discharge).

42. It makes no difference whether debtor intended to injure an individual creditor. *Chalik*, 748 F.2d at 618.

43. "Creditors are entitled to judge for themselves what will benefit, and what will prejudice them." *Id.* at 618 (citing *Morris Plan Indus. Bank v. Finn*, 149 F.2d 591, 592 (2d Cir.1945)).

### Summary

44. To the extent that plaintiff has amended its complaint to challenge debtor's fraudulent transfer of assets to the corporations, Nu–Way and Chero–Key, as violating 11 U.S.C. § 727(a)(2), plaintiff's complaint is **DENIED**.

45. Insofar as plaintiff complains that debtor made a false oath and failed to report his interest in the corporations among his scheduled assets and statements of affairs in violation of 11 U.S.C. § 727(a)(4), plaintiff's complaint is **DENIED**.

46. Plaintiff's complaint that debtor fraudulently transferred the boat, *Carolina Wind*, and continually concealed his retained beneficial interest in the boat in violation of 11 U.S.C. § 727(a)(2) is **GRANTED**.

47. Plaintiff's complaint that debtor made a false oath and failed to schedule the boat among his assets or in debtor's statements of affairs in violation of 11 U.S.C. § 727(a)(4) is **GRANTED**.

48. The Court **ORDERS** that debtor Robert H. Lightfoot, Sr., be **DENIED** discharge.