**In re William Edward SCHROFF, Jr., Debtor.**

**SUPERIOR NATIONAL BANK, Plaintiff,**

v.

**William Edward SCHROFF, Jr., Defendant.**

**Erlene W. KRIGEL, Trustee in Bankruptcy, Plaintiff,**

v.

**William Edward SCHROFF, Jr., Defendant.**

**Bankruptcy No. 92–40756.
Adv. Nos. 92–4260, 92–4236.**

United States Bankruptcy Court, W.D. Missouri.

May 7, 1993.

252

Richard Standridge, Copilevitz, Bryant et al, Kansas City, MO, for Superior Nat. Bank.

Erlene W. Krigel, Krigel & Krigel, P.C., Kansas City, MO, for Trustee in Bankruptcy.

Richard F. Schmidt, Kansas City, MO, for defendant.

## MEMORANDUM OPINION

ARTHUR B. FEDERMAN, Bankruptcy Judge.

This case involves two adversary proceedings which were consolidated by Order of this Court on October 2, 1992. ·Plaintiffs are Superior National Bank ("Superior") and Erlene W. Krigel, the Chapter 7 trustee ("Trustee"). Such plaintiffs object to the discharge of defendant. This is a core proceeding under 28 U.S.C. § 157(b)(2)(J) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1). For the reasons set forth below, I find that debtor/defendant's discharge should be denied.

### FACTUAL BACKGROUND

This Chapter 7 case was filed on March 6, 1992. The debtor is a businessman who has owned a number of companies. The schedules and statements of affairs fail to disclose a number of facts.

First, prior to August 12, 1991, Mr. Schroff was the holder of 100 shares of stock in a company called CBR Coating Specialists Co., Inc. ("CBR"). On that date he transferred such stock to CBR itself, which then issued fifty-one shares of stock to Richard Wiggins and forty-nine shares of CBR stock to Larry Adams. Wiggins and Adams, who were and continue to be Mr. Schroff's business associates, then endorsed the shares in blank and delivered them to Mr. Schroff's prior attorney, who was holding them as of the date the case was filed. At the time of the hearing, the attorney had not caused a transfer of such shares to be made to the debtor or anyone else. No disclosure of debtor's transfer, or of any interest in the shares, was made on the statement of affairs or bankruptcy schedules. Mr. Schroff continues to work for CBR, which has and continues to pay certain of his living expenses. According to employees of CBR, there was no change in CBR's operations after the stock transfer. According to Mr. Schroff, such pay-

ments represent loans to him by CBR, not salary or consideration for the stock transfer. If loans, CBR should have been listed as a creditor, which it was not. Additionally, Schedule I, filed under oath with the bankruptcy petitions, lists monthly income, not loans, of $1,000 from CBR.

Secondly, Mr. Schroff failed to disclose his interest in two other corporations still owned by him. One of these is Grand Motor Cars, Inc. ("Grand Cars"), which was incorporated on August 28, 1989. In 1991, Grand Cars had receipts of $26,958. The corporation owns two vehicles, and currently has accounts receivable due and owing for cars sold on credit.[1] The other corporation is Byron Scott Development Co., Inc. which was incorporated on May 10, 1991. Mr. Schroff is the sole shareholder of both corporations, and neither was listed as an asset in his bankruptcy filings.

Debtor also failed to disclose a one-half interest in property he holds as a tenant-in-common with his sister, Marlene Porter.

Certain misstatements were made as to vehicles. On Schedule B debtor listed a 1979 Plymouth Valiant Stationwagon, which he now claims he never owned. He failed, however, to list a 1985 Lincoln Town Car which is owned by him, as well as a 1988 Lincoln Town Car which was awarded to him by the Johnson County, Kansas District Court in a divorce proceeding. Nor are the liens against those assets, in favor of Ford Motor Credit and Overland Park State Bank, listed as liabilities. Those liens have been paid off and released since the Chapter 7 case was filed.

In addition, the schedules failed to list a number of debts, including attorneys fees of at least $10,000 due McDowell, Rice & Smith, credit card debts due Amoco, Texaco, and Conoco, and obligations of at least $40,000 due debtor's ex-wife.

Finally, on his Chapter 7 petition, Mr. Schroff listed his address as 1211 West 27th Street, Kansas City, Missouri, 64108. He has maintained that that is his residence during each deposition taken during the pendency of this bankruptcy case. When asked at the hearing where he lives, he answered 6720 West 52nd Place, Mission, Kansas. CBR, which Mr. Schroff no longer owns, pays rent to his roommate at the Mission, Kansas address.

## DISCUSSION

Plaintiffs object to Mr. Schroff's discharge on four specific grounds: (1) transfer of property within one year prior to the bankruptcy with the intent to hinder, delay, or defraud a creditor of the estate pursuant to 11 U.S.C. § 727(a)(2)(A); (2) failure to keep or preserve records from which the debtor's financial condition could be ascertained pursuant to 11 U.S.C. § 727(a)(3); (3) the knowing and fraudulent making of false oaths in his schedules and statements of affairs, at Rule 2004 Examinations, in his deposition, and at the hearing pursuant to 11 U.S.C. § 727(a)(4); and (4) failure to satisfactorily explain the loss of assets and deficiency of assets in this case pursuant to 11 U.S.C. § 727(a)(5).[2]

---

**1.** It should be noted that immediately prior to the trial of this objection to discharge, debtor moved to dismiss his bankruptcy proceeding. At the hearing on such motion, debtor's counsel argued that Grand Cars is now a valuable asset, that the debtor wishes to utilize such value, as well as future income to be generated by Grand Cars to pay his creditors in full or part, and that therefore a Chapter 7 is no longer needed. The debtor's motion to dismiss was denied. Thereafter, at the trial of this action, the debtor testified that in the first three months of 1993 Grand Cars had no income or receipts, owns no assets, and has a negative $7,000 net worth.

**2.** Section 727 provides in relevant part:

(a) The court shall grant the debtor a discharge, unless—

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
(A) property of the debtor, within one year before the date of the filing of the petition;

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business

■ Bankruptcy relief is an equitable doctrine and bankruptcy courts are courts of equity. *In re Global W. Development Corp.*, 759 F.2d 724, 727 (9th Cir.1985). As such, the relief afforded by a discharge of debts enables the *honest debtor* to make a "fresh start." The emphasis here is on the honesty of the debtor. It only takes a showing that a debtor intended to defraud one creditor in order for the Court to deny the discharge. *In re Adeeb*, 787 F.2d 1339, 1343 (9th Cir.1986).

■ The standard of proof in 11 U.S.C. § 523 dischargeability proceedings is a preponderance of evidence standard. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). The same is true in a proceeding under 11 U.S.C. § 727. *See In re Lightfoot*, 152 B.R. 141, 145–46 (Bankr. S.D.Tex.1993) *citing First National Bank v. Serafini (In re Serafini)*, 938 F.2d 1156, 1157 (10th Cir.1991); *In re Cook*, 126 B.R. 261, 265 (Bankr.E.D.Tex.1991).

### *Denial of Discharge Pursuant to 11 U.S.C. § 727(a)(2)(A)*

■ In order to prove that debtor transferred assets within one year of the bankruptcy filing with intent to hinder, delay or defraud a creditor, plaintiffs must prove the following elements:

(1) That the transfer of property occurred;

(2) That the property transferred was owned by the debtor;

(3) That the transfer occurred within one year before the date the bankruptcy petition was filed; and

(4) That the debtor had, at the time of the transfer, the intent to defraud a creditor.

*In re Cook*, 126 B.R. 261, 266 (Bankr. E.D.Tex.1991). Mr. Schroff transferred all of the stock of CBR which was owned by him back to the corporation within one year before the bankruptcy petition was filed. The corporation then transferred such stock to Mr. Schroff's business associates. Thus, the first three elements are met.

■ As to the final element, intent is rarely subject to direct proof. *In re Essres*, 122 B.R. 422, 426 (Bankr.D.Colo. 1990). Rather it is established by circumstantial evidence. *McCormick v. Security State Bank*, 822 F.2d 806, 808 (8th Cir. 1987). *See also Lightfoot*, 152 B.R. at 146–47. Fraudulent intent is presumed in cases in which a debtor has gratuitously conveyed valuable property to another. *Abbott Bank–Hemingford v. Armstrong (In re Armstrong)*, 931 F.2d 1233, 1239, *reh'g denied* (8th Cir.1991). Once such a transaction has been shown by the plaintiff, the burden then shifts to the debtor to prove that his intent was not to hinder, delay, or defraud. *Id.* Some factors to consider when determining if a debtor intended to defraud creditors are:

(1) lack or inadequacy of consideration;

(2) family, friendship, or other close relationship between transferor and transferee;

(3) retention of possession, benefit, or use of the property in question;

(4) financial condition of the transferor prior to and after transaction;

(5) conveyance of all of debtor's property;

(6) secrecy of the conveyance;

(7) existence of trust or trust relationship;

(8) existence or cumulative effect of pattern or series of transactions or course of conduct after pendency or threat of suit;

(9) instrument effecting the transfer suspiciously states it is in fact bona fide;

---

transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account;

. . . . .

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities;

11 U.S.C. § 727(a).

(10) debtor makes voluntary gift to family member; and

(11) general chronology of events and transactions under inquiry.

*Lightfoot,* 152 B.R. at 146–47 (citations omitted). Courts have found that any one of these factors can be a sufficient basis on which to find the requisite intent, and that the presence of more than one strongly indicates that the debtor did, in fact, possess the requisite intent. *Id. citing In re Titus,* 75 B.R. 256, 259–60 (Bankr.W.D.Mo. 1985). I find that at least five of these factors are present in this case.

Mr. Schroff received no consideration for the stock he transferred to CBR. He contends that at the time the stock was worthless, as the corporation had only liabilities and no assets, and the consideration he received was relief from the liabilities assumed by the new owners. Though the business records of this corporation are less than complete, it appears the company was able to pay a salary to Kay Dreiling, the bookkeeper, and to make payments to Mr. Schroff after the stock transfer. Further, the few records provided indicate that approximately $212,899 in cash flowed through the corporation for the period in question. Pl.Ex. # 34 at 25. Richard Wiggins stated in his 2004 Exam that at the time he acquired CBR it had the following assets: three desks, a 1969 truck, three calculators, two compressors, a two gallon paint pot, a one cup paint gun, and a fax machine. *See* Pl.Ex. # 32 at 21–23. CBR transferred the stock to two long-time business associates of Mr. Schroff, who now contend that they took the company to help out their friend and that they both work for no salary. CBR continued to pay the rent on Mr. Schroff's home, along with other consumer bills attributable to Mr. Schroff. In addition, Mr. Schroff's attorney had the authority to transfer this stock back to him at any time. And, since Mr. Schroff and his associates failed to respect corporate formalities, money flowed freely between CBR, which was no longer owned by the debtor, and Grand Cars, which was owned by him. I find that this transaction meets the first three indicia of the "badges of fraud." Further, I find that Mr. Schroff

was not in a favorable condition financially immediately after the transfer. He was the subject of a judgment on September 25, 1991, in the sum of $61,631.02 in favor of Superior. Pl.Ex. # 9. His stock transfer effectively prohibited Superior from executing against such stock. The stock transfer was done in a secretive manner, and was not disclosed in his statement of affairs. As a consequence of the transfer, Mr. Schroff continued to receive the benefit of stock ownership, because CBR paid his rent and other living expenses. Yet, the stock was not available to satisfy the claims of Superior or other creditors. I find that Mr. Schroff intended to deceive his creditors when he transferred the CBR stock. Therefore, all elements necessary to deny his discharge under 11 U.S.C. § 727(a)(2)(A) have been proven.

### *Denial of Discharge Pursuant to 11 U.S.C. § 727(a)(3)*

 Plaintiffs also contend that Mr. Schroff failed to keep adequate business records from which his business transactions might be ascertained. 11 U.S.C. § 727(a)(3). A bankruptcy court and creditors are dependent upon the accuracy of a debtor's records in order to evaluate his transactions. A prerequisite to the granting of a discharge is that the debtor keep and preserve books adequate enough to enable the Court to ascertain the debtor's financial history and record. *In re Kottwitz,* 42 B.R. 566, 569 (Bankr.W.D.Mo. 1984). According to Ms. Dreiling, the bookkeeper for the various corporations, many of the transactions of debtor's business were done in cash. For example she would cash checks received from customers, bring the cash back to either Adams, Wiggins, or Schroff, and they would pay her salary out of it.

Debtor himself did not have a bank account within three years prior to the bankruptcy, was paid an unspecified amount in cash by corporations he owned or had owned, received an unspecified amount of cash income from betting on baseball games, and received an unspecified amount of income in loans from his roommate, Wal-

ly Hodges, who is not listed as a creditor. Debtor has inadequate records from which any of these amounts can be ascertained. He testified that he overstated his expenses on his 1991 tax returns, and did not know where the numbers on such returns came from. I find that debtor failed to keep or preserve records from which his financial condition or business transactions might be ascertained, and that his discharge should therefore be denied pursuant to section 727(a)(3).

### Denial of Discharge Pursuant to 11 U.S.C. § 727(a)(4)

Plaintiffs next contend that Mr. Schroff knowingly and fraudulently made a false oath in connection with his bankruptcy case. 11 U.S.C. § 727(a)(4). Because bankruptcy courts are courts of equity, a debtor must "exercise great care to schedule his assets ... properly." *King v. Harry*, 131 F.Supp. 252, 254 (D.D.C.1955). The accuracy and veracity of the debtor's schedules is essential to the successful administration of the case. *In re Chalik*, 748 F.2d 616, 618 (11th Cir.1984). However, the false oath must be material. *Mertz v. Rott*, 955 F.2d 596, 598 (8th Cir.1992); *In re Olson*, 916 F.2d 481, 484 (8th Cir.1990). The oath is material if it "bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *Mertz* at 598. In *Olson*, the Court goes on to hold that even if the value of an asset or lack thereof is questionable, the failure to disclose it is material. *Olson* at 484. *See also, In re Beauboeuf*, 966 F.2d 174 (5th Cir.1992). The bankruptcy schedules and statement of affairs do not ask the debtor to make an assessment of what he thinks are important assets or debts. Debtor must, under oath, list all creditors and assets, as well as all transfers of property within the prior year.

As found previously, the debtor's transfer of CBR stock was made with the intent to defraud his creditors. His failure to list that transfer in the bankruptcy statement of affairs, filed some seven months later, was knowing and fraudulent. His failure to list various other assets, and liabilities, was knowing and fraudulent as well. The fact that numerous, major assets were omitted will alone satisfy the requirement that such omissions be knowing and fraudulent. *Commercial Nat'l Bank v. Kindorf (In re Kindorf)*, 105 B.R. 685, 689 (Bankr.M.D.Fla.1989). I find that debtor did knowingly and fraudulently make false oaths of material facts in his bankruptcy proceeding. Therefore, his discharge should be denied pursuant to 11 U.S.C. Section 727(a)(4).

### Denial of Discharge Pursuant to 11 U.S.C. § 727(a)(5)

Finally, plaintiffs contend that debtor's discharge should be denied pursuant to section 727(a)(5) because of his failure to satisfactorily explain any loss or deficiency of assets. Once the plaintiff demonstrates a loss of assets, the burden of proof shifts to the debtor to explain the loss. *In re Ransom*, 75 B.R. 684, 686 (Bankr.E.D.Mo.1987). If the debtor's explanation is too vague, indefinite, or unsatisfactory then the debtor is not entitled to a discharge. *Id.* Debtor must also "explain his losses or deficiencies in such a manner as to convince the Court of good faith and businesslike conduct." *Miami National Bank v. Hacker (In re Hacker)*, 90 B.R. 994, 996 (Bankr.W.D.Mo.1987). An explanation based on an estimate of the debtor, with nothing offered in the way of verification or affirmation by means of books, records or otherwise is unsatisfactory. *Hacker*, at 997. Any loss of assets is sufficient to deny a discharge if the explanation for such loss is unsatisfactory. *Id. Hacker* goes on to state that the intention of the debtor is irrelevant, as is the credibility of the debtor, if the explanation is unsupported by sufficient documentation. *Id.* at 1001–1002. Debtor testified that he does not know where he got the numbers used in his tax returns. The evidence further shows approximately $226,000 that was unaccounted for by the bank statements and canceled checks of CBR and Grand Motors. *See* Pl.Ex. # 33 at 85–89 and Pl. Ex. # 32 at 24. Mr. Schroff has received

an unspecified amount from such companies; however, because he has chosen to operate on a cash basis without adequate records it is impossible to determine how much or what he did with those funds. I find that plaintiffs have shown that there are assets unaccounted for by debtor's schedules, statement of affairs, and testimony, and that debtor has failed to adequately explain or document the loss of these assets. I, therefore, find that debtor/defendant's discharge should be denied pursuant to section 727(a)(5).

### MISCELLANEOUS MATTERS

The Trustee has requested that Mr. Schroff be required to turn over to her the 1985 and 1988 Lincoln Town Cars as assets of the estate. That request will be granted.

Finally, both the trustee and Superior have requested that they be awarded attorney's fees against defendant. There is no statutory basis for awarding attorney's fees to prevailing creditors in § 727 actions. Absent a statutory right, a party must establish an independent basis for an award of attorney's fees.

The Eighth Circuit has recognized that a prevailing creditor may recover attorney's fees when the parties have contractually provided for fee shifting and the fees are ancillary to a primary debt which is found to be nondischargeable. *In re Hunter*, 771 F.2d 1126, 1131 (8th Cir.1985); *See also, Transouth Financial Corp. of Florida v. Johnson*, 931 F.2d 1505 (11th Cir.1991); *Matter of Jordan*, 927 F.2d 221 (5th Cir. 1991).

Here the note executed by debtor in favor of Superior does provide for the award of attorney's fees. Therefore, those fees will be allowed in the amount of $5,300.00. As to the trustee, of course, there is no contract providing for an award of fees, so the trustee's request for such fees from the debtor will be denied.

An Order consistent with this Memorandum Opinion will be entered this date.